## SIM ET AL. *v.* HURST ET AL.

PRACTICE.—*Demurrer.*—Where a demurrer to a complaint is overruled, and then a motion to strike out parts of the complaint is sustained, and afterward a second demurrer is filed to the complaint and overruled, no question can be made, on appeal, as to the correctness of the ruling upon the first demurrer.

TURNPIKE.—*Pleading.*—*Injunction.*—The statute of 1865 requires that a suitable person shall estimate the cost of a proposed gravel road, and that he shall " take an oath to perform his duty according to the best of his ability." A complaint to enjoin the collection of a tax for the construction of a gravel road alleged, as a ground of objection to the tax, that the engineer did not take an oath that he would " discharge his duties according to and as required by law."

*Held,* that the complaint did not state that he did not take an oath to perform his duty according to the best of his ability, and the objection was not well taken.

SAME.—*Pleading.*—The allegation that a civil engineer did not make any legal report of the cost of a turnpike is not the allegation of a fact.

SAME.—*Pleading.*—*Appended Document.*—Where the complaint alleged, that " the civil engineer appointed to estimate the cost of a gravel road did not make any legal report of the cost of said road, as is shown by a copy of the report filed by him, which is made a part hereof and marked ' Exhibit B ;' "

*Held,* that such a mode of pleading was unauthorized; that the court could not be required to refer to documents unnecessarily appended, to supply allegations omitted in the pleading.

SAME.—*Tax for Construction.*—*Apportionment of Tax.*—Under the act of March 6th, 1865 (3 Ind. Stat. 534), the aggregate cost, as estimated by a civil engineer, of a proposed gravel road is to be apportioned among the owners of the real estate within certain prescribed limits, according to the value of the real estate as assessed on the books of the auditor. The line of a proposed gravel road was projected in three counties, and the estimated cost of the road was reported by the engineer to the auditor of each county, and the tax was apportioned by the auditor of a certain one of said counties without anything to show what the lands liable to assessment in the two other counties were appraised at or what they would produce.

*Held,* that the apportionment was not made on a proper basis and was illegal.

SAME.—" *Real Estate.*"—The words " real estate," as used in the fifth section of said act, which requires the auditor to fix the amount of each man's tax according to the value of his real estate within the prescribed limits, comprehend improvements, as well as the land without improvements.

PLEADING.—*Complaint.*—A complaint is defective which shows a right of action in a part only of the plaintiffs.

SAME.—*Estoppel.*—*Injunction.*—*Turnpike.*—*Tax.*—Where a complaint praying for an injunction to restrain the collection of a tax assessed for the construction of a gravel road, under the act of 1865, alleges for cause the illegality of the assessment, an answer of estoppel, on the ground that plaintiffs

stood by while the work progressed, etc., is defective, which does not allege that the tax was collectible, or that the treasurer was about to collect or was threatening to collect the tax, or show that the plaintiffs had a right of action for which they might have instituted proceedings earlier to enjoin the collection of the tax.

PRACTICE.—*New Trial.—Motion.*—Errors of the court in its action on motions to strike out and on demurrers to pleadings are not assignable as reasons for a new trial.

SAME.—*Evidence.*—Evidence offered in support of an answer which has been held bad on demurrer should be rejected.

SAME.—*Motion for New Trial.—Bill of Exceptions.*—A motion for a new trial which only referred to a bill of exceptions for the facts on which it was founded as constituting error in the admission or rejection of evidence, the record showing that such bill of exceptions was not then made, was *held* insufficient.

SAME.—*Pleading.—Motion to Strike Out.*—A judgment will not be reversed on appeal for error of the court below in refusing to strike out part of a complaint, where the remaining part of the complaint states a cause of action.

From the Wayne Circuit Court.

*B. F. Claypool, H. C. Fox,* and *C. H. Burchenal,* for appellants.

*W. A. Peele, J. B. Julian,* and *J. F. Julian,* for appellees.

DOWNEY, C. J.—This was a complaint by the appellees, twenty in number, against the appellants, to enjoin the collection of certain assessments made for the construction of a turnpike or gravel road, under the act of March 6th, 1865, Acts 1865, p. 90, 3 Ind. Stat. 534. There was a demurrer to the complaint, which was overruled. A motion was then made to strike out parts of the complaint, which was sustained in part and overruled as to the residue. The defendants then again demurred to the complaint, for the reason that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled, and the defendants excepted.

No question can be made upon the ruling upon the first demurrer. The complaint, as it stood after the motion to strike out was sustained, alleges that on the 13th day of March, 1867, permission was granted by the Board of Commissioners of Wayne county to certain persons, to organize a company to construct a gravel road under said act, by the name

of "The Section Line Turnpike Company;" the road to begin at a designated point in Wayne county, and run south three miles in that county, then on the line between Union and Wayne county one mile, thence on the line between Union and Fayette counties to the Brownsville and Milton pike, the whole distance being between five and six miles; that on the 15th day of April, 1867, the Board of Commissioners of Union county granted the same persons a like permission, and on the 13th day of April, 1867, the Board of Commissioners of Fayette county granted to the same persons like permission; that, in accordance with said permission, said persons organized said company and elected officers thereof, who have ever since held said offices and managed and controlled said road; that such proceedings were had on the part of said company and the several boards of commissioners of said counties, that taxes were assessed under said law against the plaintiffs for the alleged construction of said road, as follows:   Here the amount of taxes for the year 1867 against each one of the plaintiffs is stated. That said taxes are assessed against the lands of said plaintiffs, situated in said county of Wayne, within three quarters of a mile of said road; that a like amount was assessed against them for the year 1868 and for 1869, and that all of said taxes have been placed on the duplicate by the auditor of said county, and placed in the hands of the treasurer of the county for collection, who is demanding of the plaintiffs the payment of the same, and threatening to collect the same by distress and sale of property if not voluntarily paid; which threats they fear will be carried out, if the officer is not enjoined from so doing; that the said company and the officers thereof are urging on the said treasurer the collection of said several assessments; that the said taxes and assessments and said pretended organization of said company are illegal and void, and the action of the said defendants in trying to collect said taxes wrongful and oppressive, in this, to wit, etc.

4. Elisha W. Schrader, the person appointed to estimate

the cost of the road was not duly sworn to discharge his duties according to and as required by law, and did not make any legal report of the cost of said road, as is shown by a copy of the report filed by him, which is made part hereof and marked exhibit B., etc.

7. The taxes assessed against the plaintiffs were so assessed and set down by said county auditor, without any data from which to ascertain, determine, or proportion the same; the said estimate of said Schrader filed in each of said counties with each of the auditors thereof, which is made part hereof, it is true, shows the aggregate cost of the road, but if strictly legal and sufficient in other respects it fails to show, and nothing else was used to show, what the lands liable in the other counties were appraised at, or what sums they would produce. The whole assessment or apportionment was mere guesswork on the part of the several auditors making the same. There is, the plaintiffs allege, a wide difference between the value of the lands along the line of said road in the several counties of Wayne, Union, and Fayette, of which the several auditors when they apportioned said taxes knew nothing, and no means of knowing were furnished them; the result being that there is in said assessment great injustice done said plaintiffs and a total absence of equality in the apportionment of the burthens intended by the law to rest equally on all, etc.

11. The real estate subject to taxation, within three quarters of a mile of said road, for the construction thereof, was assessed and taxed, in the counties of Wayne and Union, both lands and improvements, and in the county of Fayette the lands only, without the improvements, were taxed; and the plaintiffs say that there were at the time said turnpike company was organized, and yet are, improvements on said lands so located within three-quarters of a mile of said road in said county of Fayette, and liable to be taxed for its construction, of the value of at least three thousand dollars, as shown by the last appraisement of real estate in the auditor's office of said county, which were not taken into the account

and were wholly disregarded in apportioning and assessing said taxes; by which means the taxes of the plaintiffs have been increased and rendered unequal and unjust as to them.

12. At and before the commencement of proceedings before the board of commissioners of Wayne county to obtain a permit to organize said turnpike company, certain other persons made an application to said Wayne county board to organize a turnpike company under the name of The Pleasant Valley Extension Turnpike Company, a permit to do which was first granted them by said board, as per copy of record of proceedings herewith filed and made part hereof, and marked exhibit C. And the plaintiffs allege that a similar permit was afterward granted said last named company by the Board of Commissioners of Fayette County, as per copy of proceedings by said board herewith filed and made part hereof and marked exhibit D.; by means of which several proceedings, said persons were entitled to organize said Extension Turnpike Company, and did so organize the same, and did under the law cause the real estate located within three-fourths of a mile of said road in said counties of Wayne and Fayette to be assessed with the taxes collectible on the same, as is shown by exhibit D. herewith filed. And the plaintiffs say that said Extension Turnpike Company has gone regularly forward in the prosecution of the work on their road, collecting the taxes due from the parties liable therefor, and complying with the law in every particular. And the plaintiffs say that in the said county of Wayne the said two roads are located within a mile of each other, and that there has been assessed against five of the plaintiffs, whose names are given, taxes, the amounts of which against each of them are specified in the complaint, for the construction of said Pleasant Valley Extension Turnpike for the year 1867, on real estate owned by them respectively within three-quarters of a mile on the east side of said road, and similar sums for the years 1868 and 1869; and that of the lands thus subject to taxation and taxed against them as aforesaid, parts thereof, one-fourth of a mile in width east and west,

are located within three-quarters of a mile of the said Section Line Turnpike, and are claimed to be liable to be taxed for the construction of said road, and are actually so taxed, and the taxes are claimed as hereinbefore stated. It is also alleged that the five of the plaintiffs named, being so liable to pay said taxes to said Extension Turnpike Company, and desiring so to do, have fully paid the same on or about as fast as they became due, and have thereby become exempt from liability to pay the taxes in question assessed against them. Prayer for an injunction against the collection of the taxes so assessed against them for the construction of the road of said Section Line Turnpike Company, etc.

Recurring to the specific objections urged against the proceedings, which resulted in the assessment and levy, the fourth is, that the person appointed to estimate the cost of the road was not duly sworn to discharge his duties according to and as required by law, and did not make any legal report of the cost of said road, as is shown, etc. There are two objections here. As to the first, the manner of the swearing of the person who was appointed to make the estimate of the cost of the road, we think it can not be sustained. The fourth section of the act requires that he shall "take an oath to perform his duty according to the best of his ability." It is not stated in the complaint that he did not take this oath, but only that he did not take an oath that he would discharge his duties according to and as required by law. The second objection under the fourth specification is, that the said person did not make any legal report of the cost of said road. This is not the allegation of any fact. It is a concession that a report was made, but the allegation is, that it was not a legal one. We are referred to the report, a copy of which is filed. But this is not an authorized mode of pleading. The court can not be required to refer to documents unnecessarily appended to the pleading, for the purpose of supplying defects in the pleading. And in addition to this, no objection to the form of the report is pointed out. There is nothing in the fourth specification.

We think a valid objection to the proceeding is stated in the seventh specification. The fourth section requires the person appointed to make out the cost of construction in two written statements, one for the company, the other for the county auditor; and from the assessments on the books of the county auditor the tax is to be audited, and it is to be for each person or owner according to the value of his real estate within the prescribed limits. The aggregate cost of the road is to be apportioned among the owners of the land within the prescribed limits, according to its assessed value, as the same appears on the books of the auditor. It seems to us that the auditor must know the total value of the lands along the road within the designated limits as well as the value of each tract. Otherwise, we do not see how he can apportion the cost of the road among the owners of the lands. But it is alleged in the seventh specification, that the auditor of Wayne county had nothing before him to show what the lands liable in the other counties were appraised at, or what sums they would produce. It appears to us that, under such circumstances, he could not know what amount to assess against the real estate in his county within the three-fourths of a mile from the road. How he is to get this information is not at all indicated by the act, and we are not now called upon to decide in what way it is to be done, or whether it can be done at all or not.

The eleventh specification alleges that in Fayette county the improvements on the lands within the prescribed limits were wholly omitted, while in Wayne and Union counties the improvements were included in making the estimate of each man's tax. The fifth section of the act requires the auditor to fix the amount of each man's tax according to the value of his " real estate within the prescribed limits;" Although in assessing real estate and making out the duplicate of general taxes, the land is distinguished from the improvements, and they are set down on the duplicate in separate columns, we think that the words " real estate," used in this section, are broad enough to comprehend, and should be construed to

embrace, the improvements, as well as the land without the improvements. It follows, if we are right in this view, that the assessment in Fayette county was not made upon a proper basis, and, throwing an undue proportion of the cost of the ,road on the land-owners in Union and Wayne, including the appellees, it could not be sustained.

The twelfth specification was designed to present a question under the proviso to the third section of the act, which provides, "that no person shall, under this act, be compelled to pay taxes upon the same land for the construction of more than one road." But we think this ground of objection to the proceeding can not be sustained, as alleged in this complaint, for the reason that it is not a ground of objection in favor of all the plaintiffs, but only in favor of five of them, if it is good as to any of them. A complaint which shows a right of action in favor of only a part of the plaintiffs can not be sustained. The part of the complaint in question is liable to this objection, if not to any other.

We conclude that the court committed no error in overruling the demurrer to the complaint.

The defendants answered.

1. The general denial.

2. That the said assessment for the construction of the said Section Line Turnpike was made by the auditor of said county in August, 1867, and was by him placed upon the tax duplicate of said county and delivered to the treasurer of said county on the 15th day of October, 1867, and the said Section Line Turnpike Company was duly organized, elected directors, and commenced operations under the said permit in April, 1867, and during the summer and fall of said year said directors made contracts for the grubbing, grading, etc., of said road, involving large sums of money, and the said work was begun under the said contracts, of all which facts the said plaintiffs and each of them at the time had full notice and knowledge; and they so knowing that said company had been organized, that said assessment had been made, that said contracts and liabilities had been incurred, and that said

work was being prosecuted, all the time stood by and made no objection, nor did they take or institute any proceedings to interfere with any of said proceedings, or give notice of their intention so to do.  When the proper time arrived for the payment of the taxes of 1867, a large majority of the persons assessed for the construction of said road paid in their several assessments, in view of and in consideration of the fact that the said plaintiffs were also equally bound to pay their ratable proportion of the cost of construction of said road; and during the following year, 1868, the directors of said company received the money so paid in, and expended the same in paying for the work done on said road, and they also made further contracts for the further construction of said road; and when the time arrived for the payment of taxes for 1868, a large majority of the persons assessed for construction of said road paid their second instalment thereof, and said directors received the same and expended it in the further construction of said road; and also during the year 1869, they incurred still further liabilities on account of such construction; during all which time the plaintiffs stood by and took no proceedings to interfere with the collection of said assessment; and defendants say that if said plaintiffs shall now be relieved from the payment of their said assessment, great wrong and injury will result to said company and to said tax-payers and the public, and the said road will fail of completion, and the money so paid and expended will be a total loss, and said directors will be left subject to liabilities so incurred by them without means of paying the same; wherefore, etc.

3. That heretofore, to wit, on and before the 1st day of May, 1869, the said plaintiffs, naming eleven of them, with the full knowledge of all the facts relating to the organization of said company and the making of said assessments, voluntarily paid their assessments theretofore made and placed on the tax duplicate against them; and on said 1st day of May, 1869, they, with the advice, assistance, and consent of said other plaintiffs, met with the members of said

organization and held an election for directors of said com-
pany, at which seven persons, whose names are given, includ-
ing two of the plaintiffs, claimed to have been elected direc-
tors; and said pretended directors afterward, to wit, at the
September term, 1869, of the Wayne court of common pleas,
brought a suit against the defendants herein named as direc-
tors of said company, for the purpose of ousting them from
the office of directors and having themselves installed as
such, the record of which proceedings is filed with the
answer and made part of it; and by said acts the plaintiffs
recognized and affirmed the validity of the said organization
of said company as well as the said assessments, and thereby
they and each of them were and are estopped and precluded
from now calling in question the validity of said organization
and assessments, and are precluded from all right to have or
enforce the relief prayed for in said complaint.

The plaintiffs replied to the second and third paragraphs
of the answer by a general denial. And for further reply to
the second paragraph of the answer, the plaintiffs say they
opposed the Section Line Turnpike Road, the granting of the
permits to organize, and the assessments of the taxes to con-
struct the same from the start, as the defendants well know; that
they advised the defendants unequivocally that they would not
pay their assessments unless compelled to do so; that this
information they frequently gave them as they went on to con-
summate the work on the road, and assured them that they
would resist any attempt they might make to collect said assess-
ments from them. With this understanding, the defendants
quietly rested and made no attempt to collect any taxes from
them, and letting it so rest went on and did some work on
said road and expended some money. No attempt having
been made to collect said assessments or any part of them
until last December, the plaintiffs could take no steps to
prevent a collection, and the defendants cannot complain of
this delay or claim that they were deceived as to the plain-
tiffs' purposes. They say that they commenced this suit as

soon as the defendants showed a determination to enforce collection of the assessments.

The defendants demurred to the second paragraph of the reply. The demurrer was sustained, and the court also adjudged the second paragraph of the answer bad, and the defendants excepted and have assigned the ruling for error.

The second question for our consideration is, therefore, as to the sufficiency of the second paragraph of the answer. As will be seen, it is rested on the doctrine of estoppel. Do the facts stated show that the plaintiffs are estopped to allege the objections to the assessments?

We have held that facts substantially the same, when answered by a turnpike company organized under the act of May 12th, 1852, 1 G. & H. 474, did not estop a party against whom an assessment had been made under the act of March 11th, 1867, from setting up the illegality of the assessments made in aid of such company. *Hopkins* v. *The Greensburg, etc., Co.*, 40 Ind. 44.

There is one ground of distinction between the two cases, which is, that there the corporation had funds arising from the stock subscriptions, with which the party assessed might possibly have supposed the company was constructing the road, while here the company, according to the act of 1865, had no stock, nor any funds from any source except from the assessments. Does this difference require us to apply a different rule to this case from that which we applied in that case?

There is a defect in the second paragraph of the answer which, we think, renders it bad; and that is, that although it alleges that the auditor made the assessments in August 1867, placed them upon the tax duplicate of the county, and delivered it to the treasurer, it is not shown that the treasurer was about to collect or was threatening to collect the same, so as to afford the plaintiffs a right to injunctive relief at any time before the action was commenced. In the case of *Greencastle Township, etc.,* v. *Black,* 5 Ind. 557, a leading authority in favor of the remedy by injunction to restrain the

collection of illegal taxes, the complaint showed that a dupli-
cate had issued to the county treasurer to collect and pay over
the taxes to the township, and that the treasurer was threat-
ening to collect, and would collect them, unless restrained.

The code, which is understood to be as liberal, at least, as
the common law, in favor of relief by injunction, authorizes
that remedy, where it appears by the complaint, that the
plaintiff is entitled to the relief demanded, and the relief or
any part thereof consists in restraining the commission or
continuance of some act, the commission or continuance of
which, during the litigation, would produce great injury to
the plaintiff; or, when, during the litigation, it appears that
the defendant is doing, or threatens, or is about to do, or is
procuring or suffering some act to be done, in violation of the
plaintiff's rights, respecting the subject of the action, and
tending to render the judgment ineffectual, or where such
relief, or any part thereof, consists in restraining proceed-
ings upon any final order or judgment, an injunction may be
granted to restrain such act or proceedings, until the further
order of the court, which may afterward be modified upon
motion. 2 G. & H. 132, sec. 137. If the treasurer regarded
the taxes as legally on the duplicate, and was proceeding to
collect them, or threatening and intending to do so at any
time prior to the time when the complaint was filed by the
plaintiffs, these facts do not appear in the second paragraph
of the answer. These assessments or taxes are to be col-
lected by the treasurer as other taxes. Sec. 5 of the act.
Such other taxes are not payable so as to authorize the treas-
urer to collect them by seizure and sale of property until the
third Monday of April of the year after they are levied and
placed on the duplicate. Acts 1867, p. 215. The assessments
of 1867 could not have been forcibly collected until after the
third Monday of April, 1868, nor those of 1868 until after the
third Monday of April, 1869, nor yet those of 1869 until
after the third Monday of April, 1870. The treasurer could
not have collected any of the assessments or taxes, had he
been eager to do so, prior to the third Monday of April,

1868. The second paragraph of the answer alleges that during the summer and fall of 1867, the directors made the contracts for the grubbing, grading, etc., of the road, involving large sums of money, and the work was begun under the said contracts, of all of which facts the plaintiffs and each of them had notice. This letting of contracts, etc., was six months or more before any of the assessments were payable, or could have been collected. Certainly the plaintiffs could not have enjoined the collection of the taxes or assessments before they became collectible, even if it appeared that the treasurer was threatening to collect them. They were not therefore in default in not having taken steps to oppose the letting of the contracts, and the commencement of the work in the summer and fall of 1867. But we think the paragraph is bad, because it fails to show that the plaintiffs had a right of action, for which they might have instituted proceedings earlier than they did to enjoin the collection of the taxes. It cannot be claimed that the plaintiffs should have instituted proceedings to enjoin the putting of the taxes on the duplicate and the placing of the duplicate in the hands of the treasurer; for if that would be ground for a proceeding, it is not shown that the plaintiffs had any notice of these acts before they were done, and injunctions are not granted against acts already done.

We have examined the case of *Kellogg* v. *Ely*, 15 Ohio St. 64, and while it seems to be a case much like this, it is not just like it in its facts, and we think we should not follow it in this case. We have also examined the case of *Chapman* v. *The Mad River, etc., Railroad Co.*, 6 Ohio St. 119, and recognize the doctrine laid down there as correct, that a party entitled to relief by injunction must act promptly and not sleep on his rights, when others are acting upon his apparent acquiescence. But in the case under consideration, we think it is not shown that the plaintiffs were entitled to such relief, and therefore they cannot be said to have been guilty of such delay.

The doctrine of estoppel, as applied in this State in case

of street improvements, as indicated in *City of Lafayette* v. *Fowler*, 34 Ind. 140, and cases cited, in pursuance of which it is held that a party may, at an early stage of such proceedings, have relief by injunction, and that he loses the right to such relief by delay, seems to be sanctioned by statute, if it does not owe its origin to the statute. See 1 G. & H. 234, sec. 69. The court committed no error in sustaining the demurrer to the second paragraph of the answer.

There was a trial by the court of the issues formed, a finding for the plaintiffs, a motion for a new trial made by the defendants overruled, and judgment for the plaintiffs, perpetually enjoining the collection of the taxes or assessments. An exception was taken to the refusal to grant a new trial, and the evidence properly set out in the bill of exceptions. We are next and lastly to examine the question whether or not the court committed an error in refusing to grant a new trial.

The causes set down in the written motion for a new trial are:

1. The finding of the court is contrary to law.

2. It is not supported by the evidence.

3. The court erred in excluding legal and proper evidence offered by the defendants upon the trial, as shown by their bill of exceptions.

4. The court erred in admitting illegal and improper evidence offered by the plaintiffs and objected to by the defendants, as shown by their bill of exceptions.

5. The court erred in overruling the defendants' motion to strike out parts of the complaint.

6. The court erred in overruling the defendants' demurrer to the complaint.

The fifth and sixth reasons assigned for a new trial are not causes for which, in any case, a new trial can be granted. They are not errors occurring at the trial, and the granting of a new trial would not have brought them again before the court for consideration.

As we have determined that the fourth and twelfth specifications in the complaint were insufficient as reasons why the taxes should not be collected, we shall not examine whether they were made out by the evidence or not. Regarding the seventh and the eleventh specifications as showing valid reasons why the taxes should not be collected, we will examine the evidence in the bill of exceptions to see whether it sustains them or not.

The eleventh is, that the auditor of Wayne county had not the proper data before him or in his office, to enable him to audit or fix the amount of the taxes to be paid by the plaintiffs.

The engineer appointed reported the whole cost of the entire road at twelve thousand nine hundred and nine dollars and seventy cents, as shown by his report which was read in evidence. The auditor of Wayne county testified that the apportionment of the tax was based on the statement or report of Mr. Schrader, surveyor of Fayette county, of the cost of construction of that part of the road in Wayne county, and that there were no other papers aside from the records in his office used in making the apportionment. It seems to us that from this evidence the court might properly enough have found the truth of the seventh specification in the complaint. Schrader, the engineer, had nothing to do under the law, but to estimate and report the cost of the road. It was not his duty to furnish the quantity and valuation of the lands upon which the tax was to be based, and the tax based upon such report and without other data cannot be sustained.

We cannot determine from the evidence in the record, whether the improvements on the lands in Fayette county were included in the estimate or not, nor is it important that we should, as we view the case.

We cannot reverse the judgment on the evidence in support of the third paragraph of the answer. It may be remarked, by the way, that that paragraph of the answer is

pleaded as a bar to the whole action, while it only professes to show a reason why a portion of the plaintiffs should not maintain the action.

The defendants offered evidence in support of the second paragraph of the answer, which the court properly rejected, as that paragraph had been held bad on demurrer.

The reasons for a new trial relating to the admission and rejection of evidence are not sufficiently definite to present any question for our decision. The third reason is, that the court excluded legal and proper evidence offered by the defendants upon the trial, as shown by their bill of exceptions; and the fourth is for admitting illegal and improper evidence offered by the plaintiffs and objected to by the defendants, as shown by their bill of exceptions. The record shows that the bill of exceptions was not made until after the motion for a new trial was made and overruled. The manner of making up a record for this court in the court below, which was resorted to in this case, cannot receive our sanction. The reason for requiring a motion for a new trial to be in writing, specifying the grounds of the motion, is, that the court in which the motion is made, as well as this court, on appeal, may know the reasons relied upon. A ground for a new trial which refers to the bill of exceptions alone for the facts on which it is founded, when the record shows that the bill of exceptions was then not yet made, must necessarily be insufficient. The practice may be convenient for counsel, but it has no other merit to recommend it for adoption.

The refusal of the court to strike out the other parts of the complaint besides those which the court did strike out, as embraced in the motion of the defendants, is also assigned as error. We think the court should have stricken out the fourth and twelfth specifications for the reasons above given, but we cannot for this cause reverse the judgment.

The judgment is affirmed, with costs.