## GRAY, AUDITOR, ET AL. *v.* FOSTER ET AL.

[No. 6,740. Filed June 10, 1910.]

1. INJUNCTION.—*Threatened Placing of Illegal Taxes on Duplicates.—Action.—When Commenced.—*Where the State Board of Tax Commissioners makes an unlawful increase in the assessment of certain lands of a county, and orders the auditor to put such taxes on the duplicates and the treasurer to collect such taxes,

the interested taxpayers may immediately maintain a suit to enjoin such officers from performing such order of the state board. p. 153.

·2. TAXATION.—*State Board of Tax Commissioners.—Statutes.—Procedure.*—The powers of the State Board of Tax Commissioners are all statutory; and the statutory methods of procedure must be followed. p. 155.

3. TAXATION.—*State Board of Tax Commissioners.—Increase of Assessment.—Notice.—Failure of.*—The failure of the county auditor to give the notice required, where the State Board of Tax Commissioners desires to increase the assessment in such county, is fatal to such increase. p. 156.

4. TAXATION.—*Equalizing.—Powers of State Board.—Subdivisions of Counties.—Real Property.*—The State Board of Tax Commissioners has no power to increase the assessment upon real estate outside of the limits of the cities and towns in a county, as a class. p. 157.

5. TAXATION.—*Equalization.—Injunction.—Answer.— Departmental Construction.*—In a suit to enjoin the increase of assessment of certain lands within a county by the State Board of Tax Commissioners, an answer alleging that the construction of the statute had been that such board consider the assessment of lots in each of the cities and towns of the several counties and equalize them, does not show a departmental construction as to the equalization of lands outside of cities and towns. p. 158.

6. STATUTES.—*Ambiguous.—Departmental Construction.*—The departmental construction of a statute will have weight with the courts only where the statute is ambiguous, and where such construction has prevailed for a long time. p. 159.

7. TAXATION.—*Assessment.—Cash Value.—Injunction.—Complaint.*—A complaint to enjoin an alleged unlawful increase in assessment of certain lands, alleging that the assessment was made in due form of law by the proper officers, and at the fair cash value of the lands, sufficiently shows that such increase would make the assessment exceed the true cash value. p. 159.

From Fountain Circuit Court; *Isaac E. Schoonover*, Judge.

Suit by Wilmer N. Foster and others against William B. Gray as Auditor of Fountain county, and another. From a decree for plaintiffs, defendants appeal. *Affirmed.*

*James Bingham*, Attorney-General, and *W. H. Cox*, for appellants.

*Lucas Nebeker*, for appellees.

HADLEY, J.—In 1907 the State Board of Tax Commissioners, acting in its capacity as a state board of equalization, made an order increasing the valuation of lands in Fountain county, outside the limits of cities and towns, fifteen per cent upon the assessment thereof as returned and as revised by the county board of review of said county. This order was made and certified to appellant William B. Gray, then auditor of said county.

This suit was instituted by appellees, some twenty in number, who brought the suit for themselves and others similarly situated, as taxpayers and owners of lands outside of cities and towns in said county, and whose lands were assessed for taxation in that year, to enjoin appellant Gray as auditor and appellant Irvin as treasurer of said county—said auditor from placing such increase upon the tax duplicate of said county, and said treasurer from obeying said order, and from collecting or attempting to collect said increase—on the ground that said increase had been ordered by said state board, without first having complied with section two of an act concerning equalization of assessments of real and personal property, enacted by the General Assembly of 1905 (Acts 1905 p. 105, §10296 Burns 1908), and had made such assessment in direct violation of section four of said act (§10298 Burns 1908); and for the further reason, that said board by said order had attempted to increase the valuation of a portion of one of the statutory classes of property, as defined by section 135 of the taxing act of 1891 (Acts 1891 p. 199) as amended in 1901 (Acts 1901 p. 44, §10303 Burns 1908), in that said board had attempted to increase the assessment on lands lying outside of the limits of cities and towns and had not applied said increase to lands lying within the limits of such cities and towns.

To this complaint appellants filed separate demurrers, which demurrers were overrruled, and appellants then filed an answer, setting out in detail the proceedings of said state board of equalization, averring that a notice of the hearing

of the proposed increase of lands in Fountain county was properly prepared and delivered through the mail to appellant Gray; that said appellant placed said notice in a drawer in his office, but the notice was overlooked, and was not presented to the board of county commissioners, or otherwise posted or published; that said auditor did not call the board of county commissioners to consider said matter, and that said board of commissioners of said county did not take any steps to protect the interests of the taxpayers at said hearing, but that appellant Gray and Clinton F. Hessler, chairman of the board of county commissioners, appeared before the board of tax commissioners on July 25, the date set for the hearing of the question of said increase; that said Hessler and said Gray were taxpayers of said county; that a full hearing of all of said matters was had before said board on said date; that no certified copy of the order of said State Board of Tax Commissioners was forwarded or served upon appellant Gray, and no other or different notice was ever given of the action of said board with reference to the time for hearing, as aforesaid, and that no other hearing was had; that said appellant Gray, as auditor, is placing said increased valuation upon the tax duplicate of Fountain county, but it is not yet completed, and has not been delivered to appellant Irvin, as treasurer, and will not be delivered until January, 1908; that said auditor is not threatening to deliver said duplicate before said January 1, and appellant Irvin is not threatening to proceed to collect said increase other than in the lawful, regular and usual manner in collecting taxes after the receipt of said duplicate from said auditor.

It is also averred that since the creation and organization of said board of tax commissioners, said board has so construed the laws of the State, with reference to its powers as a board of equalization, as to authorize it, in the consideration of the statutory classes of lots, and in a few instances the statutory class of lands, to com-

pare the assessed values of the portion of said statutory classes for equalization purposes in the several subdivisions of the several counties of the State, and to increase all degrees of assessed valuation thereof in such manner as to make the total assessed valuation thereof in the several subdivisions of the several counties of the State equal and uniform. To this answer appellees' demurrer was sustained. Appellants refused to plead further, and a decree was entered against them, enjoining each of appellants from placing said increase on the tax duplicate and from collecting such tax.

The rulings on the demurrers to the complaint and the answer are separately assigned as error.

It is first urged that the action is prematurely brought, and the cases of *Smith* v. *Smith* (1902), 159 Ind. 388, *Sim* v. *Hurst* (1873), 44 Ind. 579, and *Dows* v. *City of Chicago* (1870), 11 Wall. 108, 20 L. Ed. 65, are cited to sustain this position. But those cases are not analogous to the case at bar. In the present case there is an equity principle involved, which does not appear in the cases cited. Here it is shown that a large number of persons, in fact all of the persons in one county, owning land outside of cities and towns, are interested in the litigation. It is also shown that if the increase is put upon the tax duplicate, it will show a record encumbrance and lien upon each individual piece of real estate in said county, outside of the cities and towns; that to remove this cloud or to prevent the collection of said taxes would necessarily produce a multiplicity of suits, and the prevention of a multiplicity of suits has always been regarded as a favorite ground in proper cases to invoke the aid of equity by way of injunction. 1 High, Injunction (4th ed.) §12; *Vandalia Coal Co.* v. *Lawson* (1909), 43 Ind. App. 226.

In view of these circumstances, we are of the opinion that, under the rules of procedure in this State, the action was properly brought. Such proceedings have heretofore been

recognized in this State. Bell v. Meeker (1906), 39 Ind. App. 224; State Board, etc., v. Holliday (1898), 150 Ind. 216, 42 L. R. A. 826; Yocum v. First Nat. Bank (1896), 144 Ind. 272.

The public has an interest in the orderly transaction of business, and in the definiteness and stability of the public revenues; and where, as here, many thousands of persons will be affected if the illegal tax is entered on the duplicate, thereby creating entanglements and confusion in bookkeeping and collection of taxes, and where, as here, only the illegal portion which can be definitely pointed out is sought to be enjoined, it is our opinion, considerations of public policy require that suit may be brought as soon as the assessment is definitely fixed.

The meritorious question involved in this appeal is whether the action of the State Board of Tax Commissioners, in increasing the assessment of lands outside the limits of cities and towns, was a valid exercise of its power. It is urged by appellees that this act was invalid for two reasons: (1) No notice, as required by statute, was given; (2) by considering only lands outside of cities and towns, to the exclusion of lands lying within such cities and towns, it separated a statutory class of property, an act not authorized by law. We shall consider these propositions in their order.

Section 10295 Burns 1908, Acts 1905 p. 105, §1, requires that during the first five days of its second session the State Board of Tax Commissioners shall determine the counties in which the assessment appears to be too low, fix a day in their third session when it will consider the matter of increase of such assessments, and make an order directing the manner in which a hearing may be had with reference thereto, and then provides: "Within said first five days of said second session the said board shall certify to the auditor of each of such counties the fact of the determination of said board to consider the matter of increase of such assessments, stating whether the increase to be considered appertains to

real or personal property or both and naming the day on which a·hearing may be had. Such certificate shall be accompanied by a copy of the order directing the manner in which such hearing may be had.''

Section 10296 Burns 1908, Acts 1905 p. 105, §2, imposes upon the county auditor the duty of giving notice, and provides: ''It shall be the duty of the auditor of any county receiving such certificate to give the taxpayers thereof immediate notice of the time, place and object of such hearing by posting one copy thereof at the door of the court-house in said county and by one publication thereof in the first issues thereafter of two newspapers of different politics, published in said county, if such there be, one of which shall be a daily in counties in which a daily is published.'' Such auditor is also required to call the board of commissioners together in special session within five days, in order that such board may take such steps as it deems proper in the way of preventing an unjust and inequitable increase in the assessment.

Section 10297 Burns 1908, Acts 1905 p. 105, §3, provides that at such hearing the board of commissioners may be heard by representatives, and that any taxpayer may appear in person or by attorney, and be heard with reference thereto.

Section 10298 Burns 1908, Acts 1905 p. 105, §4, provides that, after the hearings therein provided for, such board shall proceed to equalize the assessments of property, as by law provided, *"but no such increase of any assessment of either the real or personal property of any county shall be made where notice has not been given as herein provided."* (Our italics.)

The State Board of Tax Commissioners is a statutory board, and its power and authority are conferred and
2. limited by the statute. *Hart* v. *Smith* (1902), 159 Ind. 182, 58 L. R. A. 949, 95 Am. St. 280; *Bell* v. *Meeker, supra.*

Where power is given to it to do a certain thing in a cer-

tain manner, the manner prescribed is the measure of the power given. *Taylor* v. *Patton* (1903), 160 Ind. 4; *Moss* v. *Sugar Ridge Tp.* (1903), 161 Ind. 417; *Zorn* v. *Warren-Scharf, etc., Pav. Co.* (1908), 42 Ind. App. 213.

In the present case, a partial attempt was made to comply with the sections of the statute before referred to. A notice—whether wholly conforming to the provisions of the statute is immaterial—was mailed to the auditor by the state board, but there it rested. No attempt was made on the part of the auditor to give the notice or publish it; nor did he call the board of county commissioners together in special session, as required by the statute. The auditor was not the party interested. He was not the one to be notified, and mailing the notice to him was no more notice to the parties interested than placing the summons in the hands of the sheriff is service upon the parties to an action. He was but the agency through which the notice was to be given.

It must be conceded, therefore, that no notice was given. It is argued by appellants that, since the auditor and the chairman of the board of commissioners of Fountain county were present at the hearing before the state board, this obviated the necessity of notice, and amounted to a waiver of formal notice. While this might be true so far as it affected the auditor and the board of commissioners, it cannot be true as to the taxpayers. Under the statute, upon receipt of the notice prescribed, the taxpayers were given the right to appear either in person or by representative, and the auditor and chairman of the board of commissioners have no general authority to waive this right for them, and it is not claimed that the taxpayers of the county had given said officers any specific authority. If the legislature had intended that the appearance of the auditor and the chairman of the board of commissioners would be a sufficient representation of the taxpayers, it is fair to presume it would so have expressed itself in the statute. We have no right to

say what the board of commissioners would have done if it had been called together, nor what steps the taxpayers might have taken, nor what evidence they might have introduced, nor what arguments they might have presented, if they had been properly served with notice; nor whether none, some or all of the taxpayers would have appeared, nor whether their efforts might have resulted in a different conclusion of the state board.

Section 10298, *supra,* expressly prohibits the State Board of Tax Commissioners from making any increase of any assessment where notice has not been given as provided. The giving of the notice thus is expressly made a condition precedent to the exercise of the power of the state board, and the absence of such notice necessarily defeats the power, and this, too, without reference to the cause thereof. It is needless for us to argue as to the reasonableness of the provision of the statute or its purpose. It is sufficient that it is the will of the legislature legally indicated and pronounced, and as such it is a complete divestment of power on the part of the board to act otherwise than thus directed. This being true, the act of the board, in ordering the increase without the giving of notice as required, was void.

In view of the well-considered case of *Bell* v. *Meeker, supra,* it is unnecessary for us to enter into an extended argument as to the second objection made to the increased assessment here involved. The evident purpose of the legislature, as expressed by the various provisions of our taxing acts, was to permit local boards of review to equalize the assessments of all property of the various localities and subdivisions within their jurisdictions, and that said state board of equalization should begin where the county board left off, and adjust inequalities between the counties as to the various classes of property. These classes are designated by the statute as follows: "Railroad property, lands, town and city lots and personal property." If the legislature had intended that the class designated as

·lands should be separated into lands lying outside of the limits of cities and towns and lands lying inside such limits, it had the power and was its duty so to provide. It has not done so, and we have no authority to read into the statute something that the legislature clearly did not put there, no matter how cogent the reasons may appear to us or to the State Board of Tax Commissioners for so doing. Under the statute, the State Board of Tax Commissioners, in equalizing the valuation of property as assessed in the different counties, has no power to consider the property except by classes and as designated in the statute, prescribing their power and authority. *Bell* v. *Meeker, supra.*

It is argued also, very ably and earnestly, that the action of the state board in thus dividing the class of real property is warranted by virtue of a practical construction extending over a period of a number of years. It will be noticed that the averment of the answer in this regard is that the construction has been: "That it consider the total assessment of lots [not lands] in each of the cities and incorporated towns of the several counties separately, and increase or decrease the total assessed valuation thereof in each of such municipalities, in such manner as it determined would be equal and uniform among the several subdivisions of the counties of the State, and that in one or two instances it has so increased and decreased the total of said assessed valuation of lands in different subdivisions of counties of the State, and that it is and has become a rule of practical and departmental construction in this State, for the State Board of Tax Commissioners, when acting as a board of equalization, so to divide the statutory classes of property, and so to construe its powers and duties, and so to construe the laws of said State with reference thereto."

As is pointed out by appellees, this is not an averment that dividing the class of lands, as was done in this case, was in conformity with a long continued rule of practical departmental construction of said state board, since the

averment is confined to lots, with the exception of one or two instances, when it was applied to lands. The averment of the answer does not bear out the argument of counsel for appellants, but if it did, it is our opinion the statute is too plain to be varied by departmental construction, the rule of law being, that practical or departmental construction of a statute, though of long standing, will not be allowed to defeat the plain provisions thereof. Sutherland, Stat. Constr. §308; *Westbrook* v. *Miller* (1885), 56 Mich. 148.

Such construction can only be authoritative when applied to a doubtful or ambiguous law, and as affording proof of a contemporary exposition. Sutherland, Stat. Constr. 6. §308. And such construction, to have weight, should prevail for a long period, and, through observance, be uniform and notorious. Sutherland, Stat. Constr. §312.

It is also urged that the complaint is insufficient for the reason that it does not aver that the lands with the increase added would be assessed for more than their fair cash 7. value. The complaint shows that the assessment of the lands as they stand, without the increase, was made in due form of law by officers sworn to do their duty, and verified by the oaths of the assessors and members of the boards of review; and that they were assessed at their fair cash value. This valuation must stand as the true valuation of the fair cash value until it is changed in some manner expressly authorized by law. *Board, etc.;* v. *Senn* (1889), 117 Ind. 410.

It is shown by the averments of the complaint, as we have seen, that the attempted change was not authorized by law. It must therefore be presumed that the assessment, as legally made, represents the fair cash value of the property. Furthermore, the increase was not an original assessment, nor was it made for the purpose, primarily, of bringing the assessment up to the fair cash value of the property. It was for the purpose of equalizing the valuation of the lands of Fountain county with the valuation of lands of like kind

and character of other counties of the State. As a matter of fact, the lands in other counties may not be valued at their true cash value, and the duty of the board of equalization is not so much, primarily, to see that all lands are assessed at their true cash value—that is primarily the duty of the local officers—but to see that all lands of like character throughout the State are equally assessed.

There was no error in overruling the demurrer to the complaint or in sustaining the demurrer to the answer. Judgment affirmed.

Rabb, J., did not participate.