Michael GRIFFIN and Lake County, Petitioners,

v.

DEPARTMENT OF LOCAL GOVERNMENT FINANCE, Respondent.

No. 49T10–0009–TA–98.

Tax Court of Indiana.

June 28, 2002.

## ORDER AND JUDGMENT ENTRY

FISHER, J.

The Petitioner, Michael Griffin, in this case requests that the Court grant him a $180.29 refund of the Hospital Care for the Indigent (HCI) tax[1] and enjoin the State from collecting the HCI tax. The Respondent, the Department of Local Government Finance (DLGF), asks the Court to deny Griffin's motion and instead stay the effect of its April 3, 2002 decision in *Griffin v. Department of Local Government Finance*, 765 N.E.2d 716 (Indiana Tax Ct.2002), which held that the HCI tax violated Article 10, Section 1 of the Indiana Constitution. *Griffin v. Dep't of Local*

1. IND.CODE § 12–16–14–1.

*Gov't Fin.,* 765 N.E.2d 716, 724 (Indiana Tax Ct.2002).

When the Court rendered its decision in *Griffin,* by separate order it set the matter for further proceedings to determine the nature and extent of Griffin's refund. *Id.* On May 6, 2002 Griffin filed a motion to enjoin collection of the HCI tax. On June 17, 2002, the DLGF requested that Griffin's motion be denied and that the Court stay its April 3, 2002, order granting Griffin's motion for partial summary judgment on the issue of whether the HCI tax violated Article 10, Section 1 of the Indiana Constitution. On June 24, 2002, the Court held a hearing on the matter.

The parties have urged the Court to weigh the immediate harm of an unconstitutional HCI tax levy against the potential harm to the State's 750,000 Medicaid recipients if the Court enjoins collection of the HCI tax. Griffin notes that HCI revenue represents only 1.25% of the State's $4 billion Medicaid budget. Because HCI revenue represents only a small portion of the State's Medicaid budget, Griffin argues that any large-scale effect of an HCI refund on Medicaid does not outweigh the harm to taxpayers who have been assessed for an unconstitutional tax. Accordingly, he asks that collection of the HCI tax be enjoined and that he be refunded with interest the HCI tax he paid for fiscal years 1996–98, totaling $180.29. The DLGF argues, on the other hand, that if federal Medicaid matching funds are taken into account,[2] a loss of $50 million in HCI revenue ultimately would represent a loss of $126 million from the State's Medicaid budget, making it more difficult to pay for health care for Indiana's neediest citizens. As a result, the DLGF asks this Court to stay the effect of its April 3, 2002 decision,

allow the DLGF time to appeal the Court's ruling to our Supreme Court, and allow the legislature time to fix the HCI tax.

■■■ It is appropriate for the Court in this case to balance Griffin's immediate interest in enjoining the State from further collecting HCI tax against the State's immediate interest in collecting HCI revenues. *See Smith v. Smith,* 159 Ind. 388, 65 N.E. 183, 185 (1902) (holding that a court should balance the fiscal needs of the State and the claims of a citizen who seeks to enjoin collection of an illegal tax). In striking this balance, the Court may grant Griffin's request for an injunction "only at that stage of the proceedings when his substantial right may be protected ... with the minimum amount of prejudice to the public[.]" *Id.; see also Town of St. John v. State Bd. of Tax Comm'rs,* 691 N.E.2d 1387, 1389–90 (Ind. Tax Ct.1998) (*St. John IV*), *rev'd on other grounds.* Furthermore, the remedy of an injunction "against an illegal and void tax is the proper one[.]" *Yocum v. First Nat. Bank of Brazil,* 144 Ind. 272, 43 N.E. 231, 232 (1896). An injunction is also appropriate where it prevents a multiplicity of suits related to the same subject matter. *Gray v. Foster,* 46 Ind.App. 149, 92 N.E. 7, 9 (1910).

In testimony, Griffin offered his opinion as to various approaches that might offset the financial effect of enjoining collection of the HCI tax, which would include either a refund or a credit to taxpayers. Griffin argues that because the $2 million of HCI revenue that is actually spent statewide on emergency medical care for indigent patients is a relatively small amount, emergency medical care for indigents will not be jeopardized if this Court opens the door

---

**2.** The federal government matches approximately every $38 in state funds with $62 in   federal funds.

to statewide HCI tax refunds or credits. Griffin conceded, however, that there likely would be an effect on the State's Medicaid budget were immediate relief granted to him. In particular, Family and Social Service Administration (FSSA), which runs the State's Medicaid program, could lose tens of millions of dollars of federal matching funds as a result of any HCI refund. Nevertheless, Griffin suggests that FSSA could (1) trim its budget, (2) suspend its operations until the legislature fixes the HCI tax, (3) cut optional programs, or (4) rely on intergovernmental transfers to solve any budget shortfalls. Finally, Griffin submitted evidence showing that Lake County has received more than 160,000 requests for HCI tax refunds and that were those refunds granted, Lake County would run out of money before the end of the year.[3]

The DLGF presented evidence showing that the State has already factored projected HCI revenue into its $4 billion Medicaid budget for Fiscal Year 2003, which begins July 1, 2002. Overall, the State stands to lose $126 million in Medicaid funds if collection of the HCI tax is enjoined. In particular, FSSA, which relies on HCI revenue to secure federal matching Medicaid dollars, serves more than 750,000 Indiana residents and currently faces a budget shortfall of $250 million. It must somehow balance its budget before the end of Fiscal Year 2003. According to FSSA officials, to immediately enjoin collection of the HCI tax would add to its budget woes by eliminating $57 million it would otherwise receive in federal matching funds leveraged by HCI revenue, thus

necessitating cuts in programs that serve the most disadvantaged citizens of the State. Moreover, the FSSA officials testified that intergovernmental transfers need legislative approval and so denied that such transfers could provide an immediate solution to FSSA's budget concerns. Based on the foregoing, the DLGF rejects any suggestion that FSSA suspend its operations and rather urges the Court to craft a remedy that is equitable to the State's Medicaid recipients.

■ The question, then, is whether the Court's decision in *Griffin* should be given prospective effect only. It is appropriate for this Court to deny retroactive effect to cases of first impression where retrospective relief could produce substantial inequities. *See Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–7, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). *Griffin* clearly is a case of first impression. Moreover, the Court is mindful of the 160,000 claims for refund currently pending in Lake County (notwithstanding the actions of the Lake County government). The Court is also mindful of the possibility that taxpayers from other Indiana counties will, as Griffin has, seek HCI tax refunds for the past three fiscal years, which could amount to $150,000,000. Whether this sum ultimately would be paid out of county treasuries or the State treasury, it would, in either event, substantially strain an already suffering public fisc. In the end, the taxpayers of Indiana would in all likelihood be taking funds from one treasury to place it in the other treasury.

■ Accordingly, the Court holds that the effect of its decision in *Griffin* shall be

---

**3.** The Court is unmoved by Lake County's possible budget crisis. As soon as Lake County learned that this Court had declared the HCI tax unconstitutional, it spent at least $130,000 in taxpayers' dollars by mailing Lake County residents more than 250,000 forms 17T for a tax refund and letters encouraging residents to file for a refund of the HCI tax. It then advertised the refund in two prominent newspapers. Lake County's own actions have placed it on the path of a government shutdown. The Court has little sympathy.

stayed until January 1, 2003 and ORDERS that an injunction against the assessment and collection of the HCI tax shall be GRANTED on that date.[4] The State should be afforded a reasonable period of time to fix the HCI tax rate or consider other suitable solutions, and the Court believes that delaying the injunction against enforcing the HCI tax until January 1, 2003 will accommodate these concerns. *See St. John IV,* 691 N.E.2d at 1389–90 (delaying the effect of the Court's holding that a portion of the real property tax system was unconstitutional); *cf. Salorio v. Glaser,* 93 N.J. 447, 461 A.2d 1100, 1110 (1983), *cert. denied,* 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983) (delaying by 6 months the effect of a decision declaring a $30,000,000 per year transportation tax unconstitutional).

The Court now DENIES Griffin's request for a refund. The Court ORDERS that the HCI tax shall continue to be collected through the November 2002 installment of property taxes, which taxes have in most instances been billed and in some instances paid by those who pay for the entire year with the May installment. The HCI remittances are to be made by the counties to the State, as has been done in the past, with the June 30, 2002 remittance and the December 31, 2002 remittance. The HCI tax is not to be assessed, collected, or remitted on or after January 1, 2003 (unless it is a delinquent payment).

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that judgment be entered accordingly.

---

4. The Court notes that as a result of its holding here, no taxpayer, including Griffin, is entitled to a refund of HCI taxes due and payable before January 1, 2003.