LICKEY *v.* CITY OF SOUTH BEND.

[No. 25,886.   Filed June 20, 1934.]

*State, Harman & Wider* and *Parker, Crabill, Crumpacker & May,* for appellant.

*Walter L. Clements,* for appellee.

HUGHES, J.—This is an action by the appellant to enjoin the appellee from enforcing or attempting to enforce a certain ordinance of the city of South Bend.

It appears from the complaint that the appellant conducts a bakery in the city of Elkhart; that he delivers the products of said bakery, by means of trucks, to different towns and cities in Northern Indiana and South-

ern Michigan and in the country surrounding said towns and cities; that he sells the products of the bakery only at retail in the city of South Bend; that he has a large number of regular customers whom he serves daily with baked goods from trucks which operate daily in said city except on Sunday; that the customers are furnished with a card with the name of Hossick Bakery thereon and these cards are displayed in the windows of the customers when they desire to purchase any bakery goods, and the truck then stops upon signal and the driver thereof delivers such goods as the customer desires and receives payment therefor and the customer pays for the same to the driver of the truck.

It also appears from the complaint that the city of South Bend, on February 23, 1915, adopted an ordinance, No. 1758, which provided for the licensing of peddlers and hawkers. Section 1 of said ordinance provided as follows:

"Every person who shall sell or offer for sale, barter, or exchange, at retail, any goods, wares, merchandise, fruits, vegetables or country produce, traveling from place to place on, along or upon the streets of the city, or who shall sell and deliver from any wagon, push cart or other vehicle going from place to place any goods, wares, merchandise, fruits, vegetables or country produce shall be deemed a peddler and shall, before engaging in such business, obtain a license as a peddler as herein after provided."

Said ordinance also provided a license fee of $10.00 for every three months or fraction thereof. Section 11 provided for a fine of $50.00 for a violation of the ordinance and each day's violation was deemed a separate and distinct offense.

On the 9th day of December, 1929, the city of South Bend adopted an ordinance No. 2813, being an ordinance No. 1758, and repealing §6 of ordinance No. 1784, adopted May 10, 1915.

Section 1, as amended, provides: "Every person who shall sell, barter or exchange, or offer for sale, barter or exchange, at retail, any goods, wares or merchandise (which terms shall also include all fruits, vegetables, refreshments, confectionary and country produce) by traveling from place to place in said city and selling or offering to sell such things from a pack carried on the person or from a wagon, push cart or other vehicle or mode or method of transportation shall be deemed a peddler and shall before engaging in such business, obtain a peddler's license, as elsewhere in said ordinance No. 1756 provided: such peddler while on the streets and public places of said city, shall keep moving from place to place save and except while in the act of negotiating a sale or sales."

Said ordinance was also amended to provide for a fee of $50.00 for a period of one quarter for "push cart, wagon or vehicle peddler."

The complaint further alleges that after the adoption of the amending ordinance the plaintiff continued to operate his said delivery trucks in said city of South Bend, delivering baked goods to his regular customers; that the drivers of said trucks were notified by the officers and agents of the defendant to cease operating said trucks and selling and delivering said baked products unless and until licenses were obtained as provided in the amended ordinance, and threatened to arrest any driver of any of the trucks of plaintiff so operating in said city; that neither the plaintiff nor said drivers had or have taken out said license as provided; that on January 5, 1929, the defendant, by and through one of its officers, caused the arrest of one of the drivers and employees of plaintiff on a charge of violating said ordinance, in that he was operating one of plaintiff's trucks without first having obtained a license as provided; that said driver, Fred Hostetter, was cited to appear in the City Court of South Bend to answer a complaint of violating said ordinance; plaintiff further

alleges that said arrests and prosecutions should be enjoined and restrained to avoid a multiplicity of suits and prosecutions and that he has no full and adequate remedy at law. The plaintiff further alleges in his complaint that he was not a hawker or peddler under the provisions of the ordinance and that said ordinance is null and void. For the purpose of this opinion, in view of the conclusion we have reached, we do not consider it necessary to set out the many reasons assigned why the ordinance is null and void.

In the prayer of the complaint, the plaintiff asks that the city of South Bend, its officers and agents be temporarily restrained from enforcing or attempting to enforce said ordinances, and from arresting or in any way interfering with plaintiff or his agents and employees, and from filing complaints against them for any alleged violation of said ordinance, and that a permanent injunction be granted upon final hearing.

The plaintiff, to support his complaint, filed several affidavits of employees who were drivers of the delivery trucks; the appellee submitted two affidavits, one made by a police officer and the other by a food inspector. No oral evidence was introduced. The cause was submitted to the court for hearing on application for a temporary injunction by agreement, and the court denied the same and hence this appeal.

The plaintiff is asking for a court of equity to grant him relief and the question presented is: Will courts of equity intervene by injunction to restrain municipal officers from the prosecution of actions for the violation of a city ordinance where there is no property rights involved? We think this question must be answered in the negative. In our judgment the case of *State ex rel. Fry* v. *Superior Court of Lake County* (1933), 205 Ind. 355, 362, 186 N. E. 310, is directly in point in the instant case, the only difference

being that in that case a state law was involved while in the instant case we have a city ordinance. The underlying principle involved is the same in both cases.

On the proposition involved, High on Injunctions (4th Ed.) §68, says: "Since courts of equity deal only with civil and property rights, they will not interfere by injunction with criminal proceedings, having no jurisdiction or power to afford relief in such cases. Jurisdiction over such actions is conferred upon courts especially created to hear them and, with few exceptions, it is beyond the power of equity to control or in any manner interfere with such proceedings by injunction. . . . So equity will not interfere by injunction to restrain municipal officers from the prosecution of suits for the violation of city ordinances, such proceedings being of a quasi criminal nature, since equity will not interefer with the execution of the criminal law, whether pertaining to the state at large or to municipalities, which are agents in the administration of civil government. . . . If, however, the act concerning which an arrest or criminal prosecution is threatened affects civil property and its enjoyment, in protecting the property right, equity may properly enjoin the criminal prosecution. But in such cases its interference is founded solely upon the ground of injury to property and the necessity of preserving property rights. And where such rights are not clearly involved, the relief will be denied."

This court in the case of *State ex rel. Fry* v. *Superior Court of Lake County, supra,* said: "The language of some of the decisions has led text writers to state the rule to be that equity has no jurisdiction to enjoin criminal prosecution or the operation of criminal statutes *except* in certain cases, but we believe the true rule to be that equity has no jurisdiction in such matters in any case. It has, however, jurisdiction to protect property

rights by injunction where the petitioner has no adequate remedy at law, and where the injunction for the protection of property rights *incidentally* involves restraining and enjoining criminal prosecutions or the enforcement of a criminal statute this fact will not destroy the jurisdiction. Where one seeks injunctive relief, involving the enjoining of criminal prosecutions or the operation of a criminal statute, he must show that such relief is but incidental and that the basis of of the action is the protection of a property right. . . .

"From an examination and analysis of the authorities, it appears to be the rule that courts of equity have no jurisdiction to enjoin actions at law by a state, but that they have jurisdiction to enjoin officers who, under color of authority of unconstitutional or void legislation by the state, are guilty of personal trespasses, wrongs, infringements or encroachments upon the property of an individual in violation of his constitutional rights, and that a criminal action is not of itself such an invasion as affects property rights notwithstanding the necessity of a defense and the threat of frequent indictment, which is not the kind of multiplicity of actions which will give a court of equity jurisdiction." And the court in the above case further said: "But some such circumstances directly affecting vested property interests must appear, even in case of a municipal ordinance, or the court will have no jurisdiction to intervene." To this proposition the case of *Paulk* v. *Mayor and Aldermen of Sycamore* (1898), 104 Ga. 24, 29, 41 L. R. A. 772, is cited.

In the case of *Paulk, supra,* it appears that the plaintiff brought his complaint to enjoin criminal proceedings against him and his employees, under the provisions of the charter of Sycamore prohibiting and making penal the sale of intoxicating liquors within its corporate limits, and to enjoin similar proceedings under a

municipal ordinance prohibiting, under penalty of fine or imprisonment, the keeping of such liquors in the city for the purpose of sale or barter. The court said: "The plaintiff in error, with full knowledge that the charter of the city contained a provision prohibiting the sale of intoxicating liquors within its incorporated limits, and that one of its ordinances prohibited the keeping of such liquors for sale or barter therein, after seeking and taking legal advice, deliberately purchased a stock of whiskey, beer, etc., procured State and Federal licenses, opened a 'store' in that city and commenced selling his stock, in defiance of the law and the ordinance. Having voluntarily gotten himself into this predicament, he now invokes the aid of equity to extricate him therefrom, upon the plea that his business will be ruined, without authority of law, unless he is afforded this relief. He deliberately undertook to test the validity of both the local law and ordinance of Sycamore, by voluntarily and knowingly engaging in the business which they prohibited. He has ample opportunity to make this test in the courts having jurisdiction over criminal matters, and a court of equity will not invade their domain in his behalf." And the court further sets out in its opinion the following excerpt from Justice Story, in his Commentaries on Equity Jurisprudence: "And in the American courts, so far as we are informed, it has been strictly and uniformly upheld, and has been applied alike whether the prosecutions or arrests sought to be restrained arose under statutes of the state or under municipal ordinances." A long list of cases are collected and cited. In the case of *Phillips* v. *The Mayor of Stone Mountain* (1878), 61 Ga. 386, the court said: ". . . whatever may be the infirmities of the penal ordinances of Stone Mountain, an injunction in the present case was properly denied. If unlawful convictions take place before a municipal court, reversal can be

had in the superior court, as a court of law, by certiorari. This is a plain and adequate remedy, and a court of equity need not and can not interfere. Chancery takes no part in the administration of criminal law. It neither aids the criminal courts in the exercise of jurisdiction, nor restrains or obstructs them."

The Supreme Court of the United States, in the case of *In Re Sawyer* (1888), 124 U. S. 200, 210, said: "The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property. It has no jurisdiction over the prosecution, the punishment, or the pardon of crimes, or misdemeanors, or over the appointment and removal of public officers. To assume such a jurisdiction, or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses is to invade the domain of the courts of common law, or of the executive and administrative department of the government." See *Davis and Farnum Mfg. Co.* v. *Los Angeles* (1903), 189 U. S. 207, 217, wherein, among other things, it was said: "That a court of equity has no general power to enjoin or stay criminal proceedings unless they are instituted by a party to a suit already pending before it, and to try the same right that is in issue there, or to prohibit the invasion of the rights of property by the enforcement of an unconstitutional law. . . ."

The language used in the case of *State ex rel. Kenamore* v. *Wood* (1900), 155 Mo. 425, 56 S. W. 474, 48 L. R. A. 596, 599, is very appropriate to the instant case. The court said: "But in this case the bill negatives all idea of this inspection law affecting the property of plaintiffs therein, in that it is made a purely personal charge against individuals only, and can form no basis, either in law or equity, of a proceeding against their property or business. A failure to pay it can result

neither in a judgment, levy, nor seizure of their property, generally or specially; and the bill wholly fails to charge that any suit, lien, levy or seizure is threatened by the inspector in case of a failure or refusal to submit their product to his inspection. On the contrary, the sole and exclusive remedy is by an indictment or information in a court having jurisdiction over criminal cases. " The court in this case refused to grant an injunction and held that there was an adequate remedy at law and that the courts of law were open to the plaintiffs to make their defense to any prosecutions that might be had.

So, in the instant case, no property rights of the plaintiff are affected in the prosecution sought to be had against him, or any of his employees, servants, or agents, for a violation of the ordinance, in question, and a failure to pay the license fee required can result neither in a judgment, levy, or seizure of his property. And, as said in the Fry case, *supra*, ". . . a criminal action is not of itself such an invasion as affects property rights notwithstanding the necessity of a defense and the threat of frequent indictment, which is not the kind of multiplicity of actions which will give a court of equity jurisdiction."

As we have reached the conclusion in the instant case that a court of equity has no jurisdiction to entertain the same, it is not necessary for us to consider other questions presented.

Judgment affirmed.