CITY OF GARY ET AL. *v.* GARY WAREHOUSE COMPANY, INC., ET AL.

[No. 28,020. Filed November 30, 1944. Rehearing denied December 28, 1944.]

*Samuel S. Dubin* and *J. Edwin Smith,* both of Gary, for appellants.

*Draper & Eichhorn,* of Gary, and *David Axelrod,* of Chicago, Ill., for appellees.

RICHMAN, J.—This is an appeal from a decree enjoining appellants from enforcing two penal ordinances of the City of Gary requiring annual license fees for commercial motor vehicles using the city streets. The appellees were plaintiffs below. One ordinance purports to apply to vehicles kept within the city and whose commercial use is mainly upon the streets of Gary. Only one of the appellees is affected by this ordinance. The other ordinance by its terms is applicable to vehicles not kept within the city and whose commercial use is not mainly upon the streets of Gary. The other two appellees are affected by this ordinance, one of them keeping its vehicles in another state and the other keeping its vehicles in the City of Hammond.

The complaint was in three paragraphs, each by a separate plaintiff, who stated therein that he sued "in his own behalf and in behalf of all others similarly situated." Each plaintiff sought to justify resort to a court of equity by the following allegation:

"That said defendants and their respective agents and employees and persons acting under their control and direction will institute and prosecute criminal or quasi-criminal proceedings for the violation of said ordinances; and that the institution or prosecution of such criminal or quasi-criminal suits will result in a multiplicity of suits in each of which the question of validity, reasonableness and constitutionality of said ordinances would be raised as a defense and would have to be separately tried; and that the plaintiff and others similarly situated would suffer irreparable injury unless the defendants, and each of them and their respective agents,

servants, and employees be enjoined and restrained from enforcing compliance with said ordinance."

No question was raised below, nor is here raised, as to the jurisdiction of the trial court nor did appellants challenge in any manner the unusual method of joining plaintiffs and their alleged causes of action. The parties obviously were cooperating to get a declaratory decree. They chose the wrong method.

The case is substantially like *Lickey* v. *City of South Bend* (1934), 206 Ind. 636, 190 N. E. 858, decision of which is based upon the announced rule that where no property rights are involved a court of equity lacks jurisdiction to enjoin enforcement of the provisions of a penal licensing ordinance. Whether the involvment of other than property rights will give the court jurisdiction we need not determine. It is sufficient to say that no such threatened injury to appellees' business or civil rights is shown as to take the case out of the general rule. The Lickey case applies principles stated in *State ex rel. Fry* v. *Superior Court of Lake County* (1933), 205 Ind. 355, 186 N. E. 310, where prior authorities are considered at length. See also *State ex rel. Feeney* v. *Superior Court* (1934), 206 Ind. 78, 188 N. E. 486; *Goldblatt Bros. Corp.* v. *City of East Chicago* (1937), 211 Ind. 621, 627, 6 N. E. (2d) 331, 333; *State ex rel. Egan* v. *Superior Court of Lake County* (1937), 211 Ind. 303, 6 N. E. (2d) 945; *Dept. of State* v. *Kroger Baking Co.* (1943), 221 Ind. 44, 46 N. E. (2d) 237. The only difference between the case at bar and the Lickey case is that here appellees attempted a class action and grounded it on the danger of a multiplicity of suits. If a plaintiff suing for himself only is not entitled to an injunction he surely cannot enlarge his right by the allegation

that he sues for others similarly situated. So there remains only the question of jurisdiction because of the danger of multiplicity of actions. The subject was considered in the Fry case, *supra,* where there was one plaintiff who anticipated numerous prosecutions. The court said:

"From an examination and analysis of the authorities, it appears to be the rule that courts of equity have no jurisdiction to enjoin actions at law by a state, but that they have jurisdiction to enjoin officers who, under color of authority of unconstitutional or void legislation by the state, are guilty of personal trespasses, wrongs, infringements or encroachments upon the property of an individual in violation of his constitutional rights, and that a criminal action is not of itself such an invasion as affects property rights notwithstanding the necessity of a defense and the threat of frequent indictment, which is not the kind of multiplicity of action which will give a court of equity jurisdiction. *Fitts* v. *MeGhee* (1899), 172 U. S. 516, 19 S. Ct. 269, 43 L. ed. 535."

Later in the opinion three prior cases granting relief by injunction were noted and distinguished including *Davis* v. *Fasig* (1891), 128 Ind. 271, 27 N. E. 726. There a saloon keeper sued to enjoin recovery of penalties under an ordinance fixing opening and closing hours, alleging that prosecutions had been started against himself and others and that he filed the petition on behalf of himself and one hundred and seventy other persons similarly situated. The only place where a multiplicity of actions is mentioned is one sentence quoted in the Fry opinion. From this the court jumps to another alleged ground of jurisdiction citing *Mayor, etc.* v. *Radecke* (1878), 49 Md. 217, 33 Am. Rep. 239, as authority for the proposition that "any person whose interests are to be injuriously affected thereby" may

have an injunction against the enforcement of a void ordinance. This seems to have been the real basis of Judge Miller's opinion in the Davis case. We have examined the Maryland case and the eight cases cited therein and find that in each of them there was a valid and recognized ground of equity jurisdiction, usually involvement of a property right. None of them was put on the multiplicity doctrine. It is not a new thing for parties by avoiding mention thereof to attempt to confer jurisdiction where it does not exist. This was true in the old case of *Youngblood* v. *Sexton* (1875), 32 Mich. 406, wherein Judge Cooley said:

> "The question then presents itself, how this bill came to be filed, and on what ground the superior court was asked to and did proceed to render a decision on the merits. The jurisdictional question has not been argued in this court, but we are not inclined to pass it over in silence, thereby giving countenance to the idea, that by the mere acquiescence of parties a jurisdiction may be made for a court of chancery, by means of which the extraordinary remedy by injunction can be made use of to restrain public officers in their action, where neither the legislation of the state nor the general principles which control the action of courts have ever given this remedy. The writ of injunction is peculiarly liable to abuse; and the practice of resorting to it in cases where it is not allowed by law, relying upon the opposite party to overlook or waive the illegality, is not one that can safely be encouraged or sanctioned."

He says further:

> "It is sometimes admissible when many parties are alike affected or threatened by one illegal act, that they shall unite in a suit to restrain it; and this has been done in this state in the case of an illegal assessment of lands. *Scofield* v. *Lansing*, 17 Mich. 437."

We have similiar cases in Indiana including *Robbins and others* v. *The Sand Creek Turnpike Co. and Others* (1870), 34 Ind. 461 and *Dray* v. *Foster* (1910), 46 Ind. App. 149, 92 N. E. 7. In each of these the court enjoined a tax assessment which was a lien upon the real estate of the suing party and of many others similarly situated. This is recognized in the Lickey case as a ground for invoking equitable jurisdiction.

In the Youngblood case a personal tax was involved. In the case at bar the collection of the penalty is analogous to collection of the tax. Judge Cooley points out that each complainant has a remedy at law by resisting collection, stating further:

> "The sum demanded of each is distinct and separate, and it does not concern one of the complainants whether another pays or not. All the joint interest the parties have is a joint interest in a question of law; just such an interest as might exist in any case where separate demands are made of several persons. Such a common interest there might be if several persons should give several promissory notes on distinct purchase of a worthless article; and such there might have been under the former prohibitory liquor law had demands been made against several persons for liquors illegally sold to them. We venture to say that it would not be seriously suggested that a common interest in any such question of law, where the legal interests of the parties were wholly distinct, could constitute any ground of equitable jurisdiction when the several controversies affected by the question were purely legal controversies. Suits do not become of equitable cognizance because of their number only."

We are aware that later in his work on taxation Judge Cooley concedes that "there are cases in which equity on a single record might dispose of controversies which at law would require a multiplicity of

suits; and this fact will furnish ample ground for equity jurisdiction, for both the parties and the public are interested in avoiding unnecessary litigation," 4 Cooley, Taxation § 1642, but he adds "there must be involved an actual existing or threatened multiplicity of suits."

So far as the record before us discloses there is no suit pending against either of the appellees or any one else to recover penalties under these ordinances. The court below was not asked to find any facts. The parties removed that duty by stipulating what they wished the court to consider. The only stipulation pertinent to this inquiry was that the appellants will "institute and prosecute criminal or quasi-criminal proceedings for the violation of said Ordinances; and that the institution or prosecution of such criminal or quasi-criminal suits will result in a multiplicity of suits." We shall not give this stipulation any broader intendment than is necessary to satisfy the language. It does not imply harassment by a multitude of prosecutions designed to force submission because of heavy expense of defending. One prosecution of each appellee would, in a sense, be a multiplicity of suits. If there were a half dozen against that many several defendants, equity might still refuse to intervene. The stipulation manifests only present intent of the city's officers which may not materialize into more than one test suit upon each ordinance. The anticipated litigation is not beyond the control of the court where action to recover the penalty may be brought. It is not uncommon practice for courts, in which several similar actions are pending, to stay proceedings in all but one of them using it as a test case. The losing party in such a case may appeal. Pending decision of such appeal it is quite unlikely that the officers of the

City of Gary would maliciously subject either its citizens or those of any other city or state to continuous harassing prosecutions. There will be time enough to invoke the aid of equity when such a state of facts appears.

We are also aware that other jurisdictions have adopted a different rule from that disclosed by the Indiana cases first cited. See *Fairley* v. *City of Duluth* (1921), 150 Minn. 374, 185 N. W. 390, 32 A. L. R. 1258, and annotation beginning at p. 1266 and particularly the cases cited under title "Licenses" on p. 1279. See also 1 Pomeroy's Equity Jurisprudence (5th Ed.) § 254, which concludes, however, with this sentence: "And it is to be observed, that equity will not ordinarily interfere with criminal prosecutions under unconstitutional statutes or ordinances unless prevention of such prosecutions is essential to the safeguarding of rights of property." Some of the Indiana cases are referred to in a note in 12 Ind. L. J. 150 where it is concluded that in England a property interest is not and never has been a jurisdictional necessity and that the American cases have been based upon an erroneous conception of the effect of English decisions. It may be as contended by the writer of the note that an "orthodox" property interest is not essential but we think that more must be found than appears in the case at bar to justify intervention of a court of equity in criminal or quasi-criminal matters.

The decree is reversed with instructions to dismiss the complaint.

Note.—Reported in 57 N. E. (2d) 767.