MARCELINO ENES *v.* WILLIAM HOOPAI, CHIEF OF POLICE, CITY AND COUNTY OF HONOLULU.

No. 2683.

SUBMITTED APRIL 8, 1948.          DECIDED MAY 20, 1948.

KEMP, C. J., LE BARON, J., AND CIRCUIT JUDGE CORBETT IN PLACE OF PETERS, J., ABSENT.

This is an appeal by the respondent William Hoopai, chief of police of the City and County of Honolulu, from the decision and decree enjoining him from interfering with the petitioner Marcelino Enes in conducting his bootblack business on Sundays.

The principal section of the "Sunday" law provides:

"All labor on Sunday is forbidden, excepting works of necessity or mercy, in which are included all labor that is needful for the good order, health, comfort or safety of the community, or for the protection of property from unforeseen disaster, or danger of destruction or injury, or which may be required for the prosecution of or attendance upon religious worship, or for the furnishing of opportunties of reading or study;

"Provided, however, that this section shall not apply to newspaper printing offices, steamship companies, railroads, telegraph and telephone companies, hotels, inns, restaurants, cigar stores, ice cream parlors, soda water stands, garages, service stations, vendors of fishing poles, lines, hooks, sinkers, lures and bait, vendors of petroleum products, automobile parts and accessories, hackmen, owners and operators of licensed shore boats, operators and owners of licensed automobiles, news depots, graziers and ranchmen, electric light plants, gas works and slaughter houses;

"Provided, further, that personal baggage may be conveyed to and from vessels leaving and arriving at port on that day, and to and from any railroad stations; that on Sunday the loading and unloading of vessels engaged in inter-island, inter-state or foreign commerce shall be permitted; and freight may be conveyed thereto or therefrom on Sunday; that during the entire day flowers, ice, fruit and foodstuffs and materials of every nature to be used for and in the preparation of food may be sold and delivered, laundrymen and laundries may deliver and col-

lect laundry or washing, and medicinal drugs, first aid supplies, and such things as are necessary for the practice of medicine and the care of the sick, may be sold and dispensed;

"Provided, further, that except as forbidden by the liquor laws of the Territory, during the visit of the United States naval fleet in Hawaiian waters and also during the visit of cruise ships at any territorial port, all stores in any county in any port of which any ship of such fleet or any cruise ship is then visiting may operate and carry on business on Sunday;

"Provided, further, that it shall be lawful for bowling alleys and shooting galleries in the Territory to operate on Sundays between the hours of noon and 11:30 p. m., provided that such bowling alleys and shooting galleries are located not less than three hundred feet from any church; provided, further, that the last proviso shall not apply to bowling alleys and shooting galleries which are in operation on April 22, 1939;

"Provided, further, that it shall be lawful on Sunday to make repairs and alterations to any building used exclusively for the conduct of business, or to take a record or inventory of stock or merchandise held in a place of business." R. L. H. 1945, § 11611.

The penalty for violating any provision of the foregoing statute is a fine of not over $50 or imprisonment of not more than 30 days. (R. L. H. 1945, § 11615.)

The petitioner is the proprietor of a shoeshining establishment in Honolulu and employs two helpers. He and his employees habitually work at that business on Sundays, as well as on other days of the week.

In his bill for injunctive relief, petitioner alleged in substance that the respondent threatens to arrest him for violating the "Sunday" law if he continues to work at his business on Sundays; that said "Sunday" law is uncon-

stitutional, in that it is violative of the Fourteenth Amendment to the Constitution of the United States and denies to him equal protection under the law, and is unreasonable and arbitrary in its exemptions; that the exemptions permitted under said "Sunday" law bear no reasonable relation to the public health, safety, moral or general welfare, but are grossly arbitrary and calculated to benefit various and sundry merchants and businessmen at the expense of others; that said respondent will, unless restrained by the court, arrest petitioner and prevent him from doing business as aforesaid; that if arrested and prevented from doing business as aforesaid he will suffer irreparable damage, and will be injured in his fair name and standing in the community; that this proceeding is brought to prevent a multiplicity of arrests, proceedings and other suits, and that he has no plain, adequate and speedy remedy at law.

The respondent denied all allegations of invalidity and unconstitutionality of the "Sunday" law; denied that petitioner will suffer irreparable damage if arrested by respondent and prevented from doing business as a bootblack on Sundays; and denied that petitioner has no plain, adequate or speedy remedy at law.

The testimony of the petitioner, the only witness to testify, added nothing material to the facts alleged in his bill. True, he testified that Sunday is his busiest day; that he usually rests one day, other than Sunday, each week, as do his two helpers; and that he sells nothing at his place of business. But we see nothing material to any issue in this testimony. Particularly, it does not tend to establish either that such incidental damage as petitioner might suffer from being prosecuted criminally would be irreparable, in the sense that term is used, or that he has not an adequate remedy at law.

After the petitioner presented his case and rested, the

respondent moved that the bill be dismissed and argued that equity is without jurisdiction except in a case that involves irreparable damage clear, immediate and great; that the defendant has an adequate remedy at law by challenging the validity of the statute if prosecuted criminally. The motion was overruled. In announcing his decision on the motion the judge said: "The validity or invalidity of this Act, the fact that it will be repeated every calendar week, every week, raises a question which ought to be settled for the benefit of the Government as well as for the benefit of the citizens."

After general argument, the judge rendered an oral decision which was afterward incorporated in a written decision, in neither of which was the question of the equity jurisdiction mentioned. In said decision the conclusion was reached that the statute, which at its inception prohibited all labor on Sunday except works of necessity or mercy, has by subsequent amendments, exempting special businesses which possess no characteristics of necessity or mercy, become arbitrary and discriminatory and without justification as an exercise of the police power. It was also concluded that by reason of the fact that the conduct by petitioner of his business does not interfere with or disturb anyone else and is not inimical to the public health, welfare or safety, to deprive him of the right to operate his business on Sundays, the day on which, as shown by the evidence, his patrons are most numerous, would result in irreparable loss to him.

A decree was accordingly entered, permanently enjoining the respondent from interfering with petitioner in the conduct of his bootblack business in Honolulu on Sundays.

The respondent appealed, and has specified two errors, as follows: "1. The Circuit Judge erred in overruling Respondent's motion to dismiss this cause, made at the close of the Petitioner's case, on the ground that the court

did not have jurisdiction thereof to enjoin the Respondent in the enforcement of a criminal statute, in that the facts as established by the evidence herein fail to show that Petitioner has no adequate remedy at law. 2. The Circuit Judge erred in ruling that Section 11611 of the Revised Laws of Hawaii 1945, has become unconstitutional and void."

If the case presented by the petitioner is not one which equity is authorized to hear and determine as alleged by the appellant's first specification of error, the decree enjoining the enforcement of the "Sunday" law must be reversed even though said law may be unconstitutional or void for any reason.

The Hawaii statute defining equity jurisdiction provides that the several circuit judges may hear and determine in equity all cases hereinafter mentioned when the parties have not a plain, adequate and complete remedy at common law. Following the foregoing general statement are sixteen paragraphs, fifteen of which describe cases which may be heard and determined in equity (none of which mentions a bill to enjoin the enforcement of a criminal statute) and the final paragraph provides: "16. And shall have full equity jurisdiction, according to the usage and practice of courts of equity in all other cases where there is not a plain, adequate and complete remedy at law." R. L. H. 1945, § 12402.

It is apparent that if statutory authority for a court of equity to hear and determine the instant case exists, it must be found in the general provisions of paragraph 16 just quoted which authorize application of equity usage and practice, limited, however, to cases in which there is not a plain, adequate and complete remedy at law.

The petitioner-appellee in his brief admits the general rule to be, in effect, that equity will not restrain the enforcement of a penal statute even though it may be

invalid. He relies, however, upon an exception to the general rule as stated in 43 C. J. S. at page 773 in the following language: "As an exception to the general rule, stated supra § 156, it is quite generally held that, where the proceedings would involve a direct invasion of property rights and result in irreparable injury thereto, an injunction may be granted to restrain criminal proceedings based either on an unconstitutional or otherwise invalid statute or ordinance * * * ." The appellant admits the existence of the claimed exception.

The following authorities support the proposition that the right to pursue a business, calling or profession is a property right: "A citizen's right to pursue any business, calling, or profession he may choose is a property right to be guarded by equity as zealously as any other form of property." 28 Am. Jur., *Injunctions* § 124. In *Esskay Art Gallaries* v. *Gibbs,* 205 Ark. 1157, 172 S. W. (2d) 924, 926, an earlier case in the same court is quoted, as follows: "The cases all agree that the right to carry on a lawful business without obstruction is a property right, and one which the courts have never hesitated to protect, and its protection is a proper object for the granting of an injunction." *Local Union No. 313* v. *Stathakis,* 135 Ark. 86, 93, 205 S. W. 450, 452.

The appellant does not, by admitting the existence of the above exception to the general rule, admit that the instant case is within the exception. In fact, he contends that no suit in equity will lie where there is a plain, adequate and complete remedy at law. The problem narrows down to the question of whether or not the incidental injury, which the property right here involved would inevitably suffer as a result of criminal prosecution, can be said to be irreparable. If it can not, the remedy at law is as complete, practical and efficient as that which equity can afford.

That a suit in equity does not lie where there is a plain, adequate and complete remedy at law, is Horn-Book Law, so well understood as to not require the citation of authorities. But the legal remedy must be as complete, practical and efficient as that which equity could afford. (*Terrace* v. *Thompson,* 263 U. S. 197, 214.) Terrace, a citizen of the United States and of the State of Washington, and the owner of land in that state, particularly adapted to raising vegetables, desired to lease said land for a term of five years to one Nakatsuka, a Japanese alien ineligible to become a citizen. Nakatsuka, a capable farmer, desired to accept such lease and the lease would have been made but for the antialien land law of the state. Said law provides in substance that no alien, other than those who in good faith have declared their intention to become citizens of the United States, shall own, take, have or hold the legal or equitable title, or right to any benefit of any land as defined in the Act; and that land conveyed to or for the use of aliens in violation thereof shall thereby be forfeited to the state. To knowingly transfer land or the right to control, possession or use of land to such an alien is made a gross misdemeanor, punishable by fine or imprisonment or both. Said law also made it a gross misdemeanor for such alien having title to such land, or the control, possession or use thereof, to refuse to disclose to the attorney general or the prosecuting attorney the nature and extent of his interest in the land.

Terrace and Nakatsuka brought suit in the United States District Court for the Western District of Washington to enjoin the attorney general of Washington from enforcing said law, as he had threatened to do, on the grounds (a) that it is in conflict with the due process and equal protection clauses of the Fourteenth Amendment, (b) that it is in conflict with the Treaty between the United States and Japan, and (c) that it is in conflict with cer-

tain provisions of the constitution of the state. The attorney general moved the court to dismiss the complaint, upon the ground that it did not state any matters of equity or facts sufficient to entitle complainants to relief. The court granted the motion and entered a decree of dismissal on the merits.

On appeal to the Supreme Court of the United States, the attorney general again contended that the complaint did not present a case for equitable relief, even if the statute be unconstitutional, because (a) the appellants had a plain, adequate and speedy remedy at law, (b) the only civil remedy which the state has is an escheat proceeding in which the validity of the law may be finally determined, and (c) an acquittal of the criminal offense created by the statute would protect them from further prosecution. In refuting the contention of the attorney general that the complaint did not present a case for equitable relief, Mr. Justice Butler, speaking for the Court, said: "The Terraces' property rights in the land include the right to use, lease and dispose of it for lawful purposes (*Buchanan* v. *Warley,* 245 U. S. 60, 74), and the Constitution protects these essential attributes of property (*Holden* v. *Hardy,* 169 U. S. 366, 391), and also protects Nakatsuka in his right to earn a livelihood by following the ordinary occupations of life. *Truax* v. *Raich, supra; Meyer* v. *Nebraska,* 262 U. S. 390. If, as claimed, the state act is repugnant to the due process and equal protection clauses of the Fourteenth Amendment, then its enforcement will deprive the owners of their right to lease their land to Nakatsuka, and deprive him of his right to pursue the occupation of farmer, and the threat to enforce it constitutes a continuing unlawful restriction upon and infringement of the rights of appellants, as to which they have no remedy at law which is as practical, efficient or adequate as the remedy in equity. And assuming, as suggested by the

Attorney General, that after the making of the lease the validity of the law might be determined in proceedings to declare a forfeiture of the property to the State or in criminal proceedings to punish the owners, it does not follow that they may not appeal to equity for relief. No action at law can be initiated against them until after the consummation of the proposed lease. The threatened enforcement of the law deters them. In order to obtain a remedy at law, the owners, even if they would take the risk of fine, imprisonment and loss of property, must continue to suffer deprivation of their right to dispose of or lease their land to any such alien until one is found who will join them in violating the terms of the enactment and take the risk of forfeiture. Similarly Nakatsuka must continue to be deprived of his right to follow his occupation as farmer until a land owner is found who is willing to make a forbidden transfer of land and take the risk of punishment. The owners have an interest in the freedom of the alien, and he has an interest in their freedom, to make the lease. The state act purports to operate directly upon the consummation of the proposed transaction between them, and the threat and purpose of the Attorney General to enforce the punishments and forfeiture prescribed prevent each from dealing with the other. *Truax* v. *Raich, supra.* They are not obliged to take the risk of prosecution, fines and imprisonment and loss of property in order to secure an adjudication of their rights. The complaint presents a case in which equitable relief may be had, if the law complained of is shown to be in contravention of the Federal Constitution."

After sustaining the petitioner's view that the case was a proper one for a court of equity, the court examined the statute and came to the conclusion that it was not unconstitutional or otherwise invalid and therefore affirmed the decree of dismissal on the merits.

It will be readily seen that the risk not only of prosecution, fines and imprisonment but also forfeiture of title to the land proposed to be leased places the *Terrace* case within the exception to the general rule that equity will not restrain the enforcement of a penal statute. Clearly the legal remedy would have involved a greater risk than was involved in the equity proceeding. The remedy available at law would not, therefore, have been as complete, practical and efficient as that which equity afforded.

A case more in line with the case at bar than *Terrace* v. *Thompson, supra,* is *Spielman Motor Co.* v. *Dodge,* 295 U. S. 89, 95, which was a suit instituted by the Motor Company, a retail dealer in automobiles, against Dodge, District Attorney of New York County, to restrain him from instituting a criminal prosecution against the Motor Company for alleged violation of the "Code of Fair Competition for the Motor Vehicle Retailing Trade." The validity of the state statute establishing the code was challenged as repugnant to the Fourteenth Amendment.

The defendant's motion to dismiss the bill upon the ground, among others, that it failed to allege facts constituting an equitable cause of action was apparently not passed upon prior to the hearing on the merits. However, after the hearing the court sustained the validity of the statute and on that ground denied the motion for injunction and granted the motion to dismiss the bill.

On appeal to the Supreme Court the question of jurisdiction was again presented. The Court did not consider the question of the validity of the statute. On the issue of jurisdiction, Mr. Chief Justice Hughes, speaking for the Court, said:

"The general rule is that equity will not interfere to prevent the enforcement of a criminal statute even though unconstitutional. (Authorities.) To justify such interference there must be exceptional circumstances and a clear

showing that an injunction is necessary in order to afford adequate protection of constitutional rights. (Authorities.) We have said that it must appear that 'the danger of irreparable loss is both great and immediate'; otherwise, the accused should first set up his defense in the state court, even though the validity of a statute is challenged. There is ample opportunity for ultimate review by this Court of federal questions. (Authority.)

"Appellant's bill of complaint failed to meet this test. Appellant alleged that the District Attorney had applied to a magistrate of the city of New York for the issue of a summons directing the appearance of the appellant, to the end that an investigation should be made of a complaint against him for violation of the provisions of the 'Motor Vehicle Retailing Code' and that an information charging violation should be drawn. He alleged that the District Attorney intended, unless restrained, to institute criminal proceedings. The state statute made any violation of the provisions of the code a misdemeanor punishable by a fine not exceeding $500 for each offense. The bill contained general allegations of irreparable damage and deprivation of 'rights, liberties, properties, and immunities' without due process of law, if the statute were enforced. But the bill failed to state facts sufficient to warrant such conclusions, which alone were not enough. The bill alleged that appellant had a large business in buying and selling motor vehicles, but the statute did not prohibit the continuance of that business and the bill gave no facts to show that the particular requirements of the code, which were in question, would create such a serious interference as to require equitable relief. Aside from the statement of general and unsupported conclusions, the case presented by the bill was the ordinary one of a criminal prosecution which would afford appropriate opportunity for the assertion of appellant's rights. So far as the bill disclosed,

nothing more than a single prosecution was in contemplation, a point which the District Attorney emphasized by his disclaimer, on the hearing below, of any intention to institute any further prosecution against appellant until his rights, constitutional or otherwise, had been adjudicated in the pending criminal proceeding.

"The bill should have been dismissed upon the ground that it failed to state a case within the equitable jurisdiction of the District Court. The decree is modified accordingly, and, as modified, the decree is affirmed."

Other federal cases to the same effect as the *Spielman Motor Co.* case are *Fenner* v. *Boykin,* 271 U. S. 240, *Douglas* v. *Jeannette,* 319 U. S. 157, *Argonaut Mining Co.* v. *McPike,* 78 F. (2d) 584, and *Richmond Hosiery Mills* v. *Camp,* 74 F. (2d) 200, where the court said: "Injunction does not lie merely because an act is unconstitutional; but one seeking injunctive relief on that ground must further show that he is entitled to it on some clear ground of equity jurisdiction. (Authorities.) The general rule is that a court of equity has no jurisdiction to enjoin a criminal prosecution. (Authority.) An exception is recognized where it is necessary for a court of equity to enjoin the enforcement of a statute which is unconstitutional in order to protect property rights from irreparable damage. (Authorities.) We think this case falls within the general rule and outside the exception. Only a single prosecution involving a fine which could not exceed $500, was sought to be enjoined, and there is no claim that an attempt will be made to impose separate penalties for repeated violations. Appellant can protect its rights fully and completely in a criminal case, and therefore has no need to appeal to a court of equity. It is chimerical to say that its business or good will would suffer more if the constitutionality of the statute in question were challenged in defense of a prosecution for a misdemeanor rather than

by bill of injunction."

The weight of authority established by the decisions of state courts is in accord with the federal cases discussed. A typical case is *Corbin* v. *Rodgers,* 53 Ariz. 35, 85 P. (2d) 59, 61, where the court said: "In the case of City of Bisbee v. Arizona Ins. Agency, 14 Ariz. 313, 127 P. 722, the plaintiff asked for an injunction against the City of Bisbee and its marshal from enforcing the terms of an ordinance of the city requiring fire insurance agents to pay a quarterly license before transacting any business. The complaint alleged (a) that the ordinance was invalid, (b) that its enforcement would result in irreparable injury not susceptible of estimation, and (c) would require a multiplicity of suits as a remedy. We pointed out therein that if the ordinance were invalid, the defendant might plead its invalidity in a criminal proceeding, and that if the trial court held his plea good, it would be a perfect defense to the prosecution. We further held that while there were cases where equity might interfere and restrain the enforcement of an ordinance criminal in its nature, an arrest made under such an ordinance must not only be illegal but accompanied by an interference with property rights, and, in substance, that if the alleged interference consisted only in preventing the party from continuing in business while the matter was being decided, and thereby losing presumptive profit from such business, such loss was not an irreparable injury to property rights such as would justify the issuance of an injunction. On a reconsideration of that case, we think the principle stated therein is correct, and we, therefore, hold that if the alleged invasion of the property rights of a plaintiff has the effect only of compelling him to cease from transacting a business claimed by the officers to be illegal, and thereby preventing him from realizing profits from such business until the validity of the law involved is finally decided, it

would be an abuse of discretion to issue an injunction."

See also the following cases, all in accord with the foregoing: *Lickey* v. *City of South Bend,* 206 Ind. 636, 190 N. E. 858; *City of Abbeville* v. *Renfroe,* 192 Ga. 468, 15 S. E. (2d) 782; *City of Blackwell, et al.* v. *Griffith Amusement Co.,* 160 Okla. 264, 16 P. (2d) 233.

For the reasons assigned we conclude that the respondent's motion to dismiss the bill for want of equity should have been sustained. This makes it unnecessary for us to consider the question of the validity of the statute.

The decree appealed is reversed and the cause remanded with instructions to grant the motion to dismiss the bill.

*E. J. Botts* for petitioner-appellee.

*W. D. Godbold,* City and County Attorney, and *T. S. Ogata,* Deputy City and County Attorney, for respondent-appellant.