WALTER F. Y. LIU AND GENEVIEVE H. LIU
*v.* GEORGE M. FARR.

No. 2795.

PAUL B. LOW AND SEPA TANOAI *v.*
DANIEL S. C. LIU AND GEORGE M. FARR.

No. 2796.

ARGUED OCTOBER 27, 1950.           DECIDED NOVEMBER 17, 1950.
(Supplemental memoranda filed
October 26, 27, 31, 1950.)

LE BARON, J., CIRCUIT JUDGE CORBETT IN PLACE OF
KEMP, C. J., RETIRED, AND CIRCUIT JUDGE MAU
IN PLACE OF TOWSE, J., DISQUALIFIED.

24

OPINION OF THE COURT BY LE BARON, J.

These two appeals, consolidated in this court, are from the same decree of the court of equity in proceedings consolidated below under two bills for injunctions to restrain the enforcement of a certain penal statute alleged to be invalid. In accordance with oral and written decisions of the equity court sustaining the validity of that statute as proper exercise of the police power, the decree dismissed the bills, after denying the bills' prayers for permanent injunction. Such decree, however, not only adjudged that *ex parte* restraining orders and temporary injunctions be dissolved, but declared "that the portion of this decree dissolving the temporary injunction[s] shall be stayed pending appeal." As a result of that mandatory declaration in the decree, the injunctive restraint has been kept in full force and effect on the perfection of the instant appeals from the decree so that the enforcement of that penal statute has been continuously restrained since the filing of the bills for injunction up to the present time.

The penal statute in question became effective on May 4, 1949, and thereafter has continued in force. The bills for injunction, the *ex parte* restraining orders and orders to show cause were filed or entered on September 23, 1949. Returns were made on September 29, 1949. The oral decision was entered on October 8, 1949, and the written decision and the decree on November 22, 1949. Notice of appeal and deposit of costs were made in the lower court on December 2, 1949. The appeals were perfected in this

court on March 10, 1950, but not finally briefed by the parties until October 5, 1950, when the causes for the first time became ready on the calendar of this court.

The two bills for injunction are written in substantially the same language as to their material allegations and pray for the same injunctive relief from the enforcement of the same penal statute. With respect to that enforcement, the petitioners in one bill seek to enjoin respondent Farr as acting chief of police and the petitioners in the other to enjoin him and respondent Liu as chief of police of the Honolulu police department as well as those under their control. The bills in substance allege that the petitioners have been and now are operating businesses of entertainment "in strict conformity with all valid laws of the Territory"; that such statute (presumably violated in the conduct of those businesses) is invalid and unconstitutional and invades without due process of law their rights of property to pursue such businesses. The case of the petitioners is thus essentially one of conducting lawful businesses in a manner violative of a penal statute which they claim to be invalid. At this juncture it is noteworthy that the bills do not allege that the petitioners prior to the enactment of the penal statute in question had acquired property rights which thereafter have been or will be destroyed and rendered worthless or in any way adversely affected by the operative effect of such statute. The grounds for equitable relief are alleged to be that the respondents "in charge of the execution and enforcement of all penal statutes in the Territory" have threatened to enforce against the petitioners the particular penal statute in question; that by reason of such threatened enforcement "the petitioners [have lost and] will lose large sums of money" and "will suffer immediate and substantial irreparable damage before notice can be served and a hearing had"; that they "have no speedy and adequate remedy at law."

The penal statute in question is Act 147, Session Laws of 1949, which makes it unlawful "for any person who keeps or maintains any restaurant or other premises where food, beverages, or entertainment are sold or provided for compensation, or to which members of the public or members of an organization, resort for food, refreshment, or entertainment, and who is not a licensee of the liquor commission under this chapter, to promote, encourage, aid or permit the consumption of liquor on said premises, except during the hours between which licensed premises of dispensers are permitted to be open for the transaction of business in the county where said premises are located" and also makes it unlawful for any person to consume liquor on said premises within the same limitation of time. But as applied to the businesses of the petitioners, who admittedly maintain premises of such character, it does not prohibit them from selling food, beverages and entertainment or limit the time for transacting the selling thereof.

Simultaneously with the filing of the bills for injunction, *ex parte* restraining orders were issued as well as orders to show cause why temporary injunctions should not be issued to the same effect as that of the restraining orders. The orders to show cause set the date for a hearing thereon seven days after the date of filing and notice thereof was served on the filing date. Returns to the orders to show cause were made six days after the date of filing and service of notice.

On the day set for the hearing on the orders to show cause, the parties stipulated that the facts and questions of law involved therein "are substantially the same as the facts and questions of law involved in that certain equity proceedings entitled Dragon's Den, Limited, an Hawaiian Corporation, vs. Daniel S. C. Liu, Equity No. 5088, filed in the circuit court * * * on June 4, 1949; and that the issues raised by the Order[s] to show cause issued * * * on Sep-

tember 23, 1949 shall be submitted to the court without further argument." In the same stipulation, the parties agreed to consent "to the entry herein of a decision, order or judgment which is similar to the decision, order or judgment heretofore rendered and entered by the above entitled court at the conclusion of the hearing held on the order to show cause" in the *Dragon's Den* case. The record shows that at the conclusion of the hearing in that case the only decision, order or judgment pertinent to the instant cases is an oral ruling that "the temporary restraining order is and now becomes a temporary injunction, which injunction shall continue pursuant to the prayer of the petition * * *, pending final disposition of this matter * * * or until further order of the court." But there is no record of an actual entry of similiar rulings in these cases. Nevertheless, the written decision declares that the instant cases "took similar courses [to that taken by the *Dragon's Den* case], namely, restraining orders were issued in those cases enjoining the respondent, chief of police, from enforcing the Act and pursuant thereto by stipulation of the parties the restraining orders in those cases were continued in force pending a ruling on the constitutionality." The decree, however, is of dubious meaning in that it deals with the temporary injunctions as though they had been issued as such. However, it is to be interpreted like other written instruments, the determinative factor being the intention of the equity court below as gathered from all parts of the decree itself. Manifest therein is the intention of the equity court to give continuity to the existing restraint in order that it shall continue in force during the process of appeal to the same extent as it had so continued throughout the proceedings below. To effectuate that intention, the reasonable interpretation of the decree in the light of the whole record is that it did not deal with restraining orders and temporary injunctions as separate impositions of in-

junctive restraint but deals with restraining orders, in effect converted into temporary injunctions, for the purpose of dissolving them and with temporary injunctions, in effect converted from restraining orders, for the purpose of further continuing the same injunctive restraint thereunder pending appeal. This interpretation gives force and effect to every word of the decree as far as it is possible to do so in harmony with fairness and justice. It is consistent with the theory of an actual conversion, pursuant to stipulation, as adopted by the parties below and on appeal. It further is consonant to the actualities of a continuous injunctive restraint without interruption since the filing of the bills for injunction, the persistent nature of which being determinative of the true character of temporary injunctions rather than the name which may be given to the instruments imposing the restraint. This is true because the distinction between a restraining order and temporary injunction consists, not in the particular phraseology used in the order imposing the restraint, but in its effect and purpose under existing conditions, one being intended only as a restraint until the propriety of granting a temporary injunction can be determined when it becomes *functus officio* and the other as a restraint effective until the trial of the cause in which it is issued when it is either made permanent or dissolved completely. (See *Ex Parte Grimes et al.,* 20 Okla. 446, 94 Pac. 668; *Beech* v. *United States Fidelity & Guaranty Co.,* 54 Idaho 255, 30 P. [2d] 1079. Also 28 Am. Jur. 203, § 11, 206, § 13; *The Law of Injunctions* by Spelling & Lewis [1926] 30, § 18.) In thus arriving at the real meaning of the decree, this court does not condone, or find excuse for, the lax practice of counsel below resulting as it did in a confused state of affairs and a muddled record.

The appeals challenge the validity of the penal statute to the same extent as do the bills and on such challenge

present identical questions of law. But this court *sua sponte* raises a more fundamental question. It is a jurisdictional one as to whether or not equity should have given any injunctive relief under the allegations of the bills. This question was raised by the returns of the respondents to the orders to show cause and those returns in addition placed into issue whatever merits the complaint of the petitioners may have had. The question, however, had already in effect been answered in the affirmative by the equity court as to the injunctive relief afforded by the *ex parte* restraining orders. That court thereafter reaffirmed its answer by continuing that relief in force throughout the proceedings below and during the process of appeal as well as by passing upon the validity of the statute in oral and written decisions.

In a strict sense, the equity court below had jurisdiction or power to grant injunctive relief in this case to the extent that its granting thereof, if wrong, would not be void. The prayers for that relief, however, are addressed to the sound discretion of the equity court to be exercised in the light of the allegations and in view of the nature of the case. But no injunction, inclusive of *ex parte* restraining orders and temporary injunctions, should be issued against officers of the law, clothed with the authority to enforce the penal statute in question, unless in a case reasonably free from doubt and when necessary to prevent great and irreparable injury. (See *Mass. State Grange* v. *Benton,* 272 U. S. 525, 71 L. ed. 387.) Although there is no statute in this jurisdiction conferring upon the equity court jurisdiction to enjoin enforcement of penal statutes, such a court has the power to do so under its inherent jurisdiction consistent with the general provisions of paragraph sixteen of section 12402 of Revised Laws of Hawaii 1945, conferring upon it "full equity jurisdiction, according to the usage and practice of courts of equity * * * where there is

not a plain, adequate and complete remedy at law." (R. L. H. 1945, § 12402, par. 16.) Nevertheless, the general rule as laid down by this court in *Enes* v. *Hoopai,* 38 Haw. 126, is that "equity will not restrain the enforcement of a penal statute even though it may be invalid." An exception, as likewise laid down, arises where such enforcement "would involve a direct invasion of property rights and result in irreparable injury," in which event "an injunction may be granted to restrain criminal proceedings based either on an unconstitutional or otherwise invalid statute or ordinance * * *." (43 C. J. S. 773, § 156.) Thus if the exception does not apply to the facts alleged in the instant bills, no injunctive relief should have been granted.

The equity court granted injunctive relief by issuing *ex parte* restraining orders which it continued in force throughout the proceedings below and during the process of appeal. The propriety of issuing those orders at the time of filing will be considered first. In analyzing the allegations of the bills, this court finds no alleged facts reasonably tending to show urgent necessity why *ex parte* restraining orders should issue forthwith at the time of filing before the propriety of issuing the temporary injunctions can be determined. The bills, however, draw from the alleged fact of a threatened enforcement a conclusion that "the petitioners will suffer immediate and substantial irreparable damage before notice can be served and a hearing had." But such conclusion is not a necessary consequence of that alleged fact or of any other in the bills. Nor do the *ex parte* restraining orders in arriving at the same conclusion point to a single alleged fact to support it and this court is unable to find any which do. Furthermore, no support is to be found for it in the operative effect of the penal statute in question with respect to the petitioners' businesses of selling entertainment as will be more fully developed in the course of this opinion. The conclusion, therefore, has no

foundation in fact and constitutes a bare one of law. Corroborative thereof are the surrounding circumstances in relation to the presence or absence of allegations in the bills.

The respondents are alleged to be chief and acting chief of police of the Honolulu police department, the situs of which is subject to judicial notice of being in close proximity to that of the equity court, the reasonable inference being that the respondents are readily accessible to service of notice as shown to be the case on the day of filing. Consonant to such inference, the presiding judge in equity set the date of hearing for a time seven days after that of the filing and there is nothing in the record or in the rules of court to indicate that such date could not have been set for an earlier time. Moreover, there is a complete absence of allegation to show the extent of time in which the petitioners were in need of injunctive relief. It is therefore doubtful as to when such need first arose and as to whether or not they intentionally waited more than four and a half months after the effective date of the statute in question before seeking the aid of equity. Nor do the bills purport to give a reason for any delay in filing them. Pertinent thereto, nothing is expressed or implied by the language employed in the bills to establish that a greater threat of enforcement or a greater loss of money would result in the ensuing seven days than that which may have continuously existed since the effective date of the statute or for one hundred and forty-two days prior to the date of filing. Nor can it reasonably be said from a reading of the bills that it appears on the facts alleged that if the seeking of equitable relief had been delayed for more than twenty weeks that any appreciable injury would be suffered if such relief were further delayed for one week so that a hearing on the orders to show cause could be held. There is thus nothing to support the conclusion of law to the contrary. It is evident

therefrom that the bills, taken as a whole from the nature of the case in the light of the surrounding circumstances, do not state a clear case of urgent necessity for an immediate restraint to prevent great and irreparable injury until the propriety of granting temporary injunctions can be determined. The extraordinary remedy afforded by the *ex parte* restraining orders, therefore, should not have been granted. There remains to be considered the continuation thereof.

The allegations state as a fact that the petitioners "have heretofore and now are operating" their businesses of entertainment. There are, however, no allegations, nor is it contended, that the penal statute in question or the threatened enforcement thereof prohibits those businesses or tends to disenfranchise, or limit the time and place for transacting them, under whatever license they may have. Nor is it alleged or contended that violations of that statute on the part of the petitioners constitute a selling of entertainment in the transaction of such businesses. Consequently, it cannot be urged with reason that the bills allege any facts of either a direct or indirect invasion of the property rights of the petitioners to pursue those businesses. Allegations characterizing the penal statute as an unconstitutional invasion of property rights to pursue such businesses are not necessary consequences of, or supported by, alleged facts. In addition, they are not warranted by the operative effect of the statute itself in regulating a part of the liquor traffic as a legislative exercise of the police power without regard to what business a particular person may be conducting when he violates the statute's provisions. They therefore to the same extent as the allegations of irreparable damage are pure conclusions of law. Nor does the general allegation that a loss of "large sums of money" has resulted and will result from the threatened enforcement provide any factual basis upon which to predicate those conclusions of

law so as to justify equitable relief where, as here, there are no alleged facts of any invasion of the property rights to pursue the petitioners' businesses of entertainment. In short, the bills do not state a case meriting the interference of equity and hence have no merits that would be subject to a hearing.

The only proper course open to the equity court on the filing of the bills, therefore, was to refuse the issuance of *ex parte* restraining orders and, unless appropriately amended, to dismiss the bills on its own motion. But that course was not taken although the jurisdiction of equity to entertain the bills was challenged by the returns of the respondents six days later. Neither were the bills amended to meet the proof which had been adduced at the hearing to which the parties stipulated. That proof disclosed that prior to the threatened enforcement substantial profits had been realized from the businesses when enhanced by violations of the penal statute in question, but that thereafter those profits dwindled to the vanishing point and will go below that point unless such enforcement is restrained, each business having an original capital investment of fifteen thousand dollars and both businesses, commonly known as "Bottle Clubs," catering to a trade in which the petitioners and their business patrons violate the statute while transacting the business of selling and buying entertainment. Nor would such an amendment have changed the case of the petitioners or added any fact of jurisdiction to it. The proof merely amplified the general allegation of financial losses by showing that they were ones which all who enter into a business, the volume and profits of which are dependent upon the liquor traffic subject as it is to control under the police power, must take into consideration and be prepared to meet. Therefore, such losses as alleged do not constitute irreparable injury that would justify injunctive relief, nor would those as proved had the bills

been amended accordingly. On the contrary, they amount to an ordinary hazard of conducting lawful businesses in an unlawful manner contrary to a penal statute enacted as an exercise of the police power, the violations of that statute being chargeable in a court of criminal jurisdiction wherein a plea of invalidity, if sustained, is a complete defense in vindication of the rights of the pleader. (See *Ginakes* v. *Johnson,* 75 N. D. 164, 26 N. W. [2d] 368; *Kelly* v. *Conner,* 122 Tenn. 339, 123 S. W. 622.) Consequently, the general rule applies, not the exception. That rule applied at the time the bills were filed and nothing has transpired since to warrant the granting of injunctive relief or the continuing of it in force.

The principles enunciated by this court in the case of *Enes* v. *Hoopai, supra,* control the determination of the jurisdictional question in this case. Under those principles, it was held that equity has no jurisdiction to restrain enforcement of a penal statute prohibiting the business of a bootblack from being conducted on Sunday, even though such statute may be invalid. In attempting to distinguish that case, the petitioners contend that it involved the loss of only a few hundred dollars whereas in this case the loss was several thousand. Such a contention is effectively answered in the apt language of the supreme court of Tennessee in *Kelly* v. *Conner, supra,* a case comparable to this one but involving alleged losses of several hundred thousand dollars on capital investments of approximately nine hundred thousand dollars wherein the court said on pages 391 and 635, respectively: "There must be one law for the rich and the poor. If complainants' bill could be sustained, every owner of a saloon would have the right to the same remedy, although his property, instead of being of the value of thousands of dollars, was that of only a few hundred; and it cannot with reason be insisted that every one who would suffer a small injury from the operation of a police

measure can stay the enforcement of the law until he can have its validity, or applicability to his case, inquired into in a court of equity." But the material distinction between the *Enes* case and this one lies in the different operative effect which each penal statute had in relation to the particular business or businesses involved, one prohibiting wholly the business itself of a bootblack on Sunday and the other regulating as to hours the consumption of intoxicating liquors on premises not licensed by the liquor commission without forbidding, or limiting the time for, the transaction of the petitioners' businesses of selling entertainment thereon. Such a distinction renders the instant case a weaker one for interference of equity with the enforcement of a penal statute than the *Enes* case and the principles enunciated by this court therein of greater force and application to the case of the petitioners than to that of the bootblack. In the same vein, the petitioners cite numerous authorities and attempt thereby to support their contention of equity jurisdiction within the exception to the general rule. But none of those authorities apply to the case of the petitioners. No useful purpose, therefore, would be served in further considering them. There is a unanimity of authorities against equity taking cognizance of a case such as that of the petitioners who in reality have neither sought nor invoked any acknowledged equity jurisdiction. They are in essence only aggrieved at not being able to continue violating an ordinary criminal statute to their own profit, free from the threat of its enforcement by the officers of the law charged with the duty of enforcing it. Most violators of the law would have the same grievance, nor would a claim of the law's invalidity as made by the petitioners suffice to justify equity in granting injunctive relief while inquiring into such claim.

Courts of equity are not constituted to deal with crimes and criminal proceedings. They have no power to punish

admitted offenders of a challenged penal statute after holding it to be valid, or to compensate those injured by the violations thereof while the hands of the officers of the law have been stayed by injunction. To that extent such courts are incapable of affording a complete remedy. Equity, therefore, takes no part in the administration of the criminal law. It neither aids, restrains, nor obstructs criminal courts in the exercise of their jurisdiction. Ordinarily a court of equity deals only with civil cases involving property rights where it can afford a complete remedy by injunctive relief. Hence it does not interfere in the enforcement of penal statutes even though invalid unless there be exceptional circumstances and a clear showing that an injunction is urgently necessary to afford adequate protection to rights of property so as to circumvent great and irreparable injury until the validity of the particular penal statute is sustained. (*Douglas* v. *Jeannette*, 319 U. S. 157; *Spielman Motor Co.* v. *Dodge,* 295 U. S. 89; *Fenner* v. *Boykin,* 271 U. S. 240; *Argonaut Mining Co.* v. *McPike,*.78 F. [2d] 584; *Richmond Hosiery Mills* v. *Camp,* 74 F. [2d] 200; *Powell* v. *Hartsfield* [Ga.], 11 S. E. [2d] 33; *Williams* v. *State Board of Barber Examiners,* 75 N. D. 33, 25 N. W. [2d] 282; *Kelly* v. *Conner, supra; Lickey* v. *City of South Bend,* 206 Ind. 636, 190 N. E. 858; *City of Abbeville* v. *Renfroe* [Ga.], 15 S. E. [2d] 782; *City of Blackwell et al.* v. *Griffith Amusement Co.* [Okla.], 16 P. [2d] 233.) For equity to so interfere in the absence of such circumstances and showing would not serve equitable justice. On the contrary, it would greatly confuse and embarrass the officers of the law as well as be violative of sound principles of public policy, which are evils to be avoided by a court of equity. (*Kelly* v. *Conner, supra.*) But those evils were not avoided by the court of equity below. It granted injunctive relief not warranted by the allegations of the bills. It thereby tied

the hands of every officer of the law in the Honolulu police department throughout the entire proceedings below and while the causes have been in the process of appeal despite the fact that in the course of those proceedings it twice sustained the validity of the penal statute in question.

In correlation, the allegation that the petitioners "have no speedy and adequate remedy at law" is a pure conclusion of law to the same extent as the other conclusions of law already considered in this opinion. There are no alleged facts reasonably tending to show that the remedy at law would not be complete and more practical and efficient, as well as speedier, than the remedy in equity. On the contrary, it is patent that the petitioners are entitled to have the validity of the penal statute determined in any criminal action brought against them in a court of criminal jurisdiction, which is created for the purpose of administering that statute and other criminal laws. If the statute is as they contend, it will there be decided and they will be discharged. If it is valid and applied to them, they will be properly convicted with the right of appeal on points of law questioning that court's holding as to validity directly to the supreme court of the Territory. In either event, a court of criminal jurisdiction is able to give effectively "a plain, adequate and complete remedy at law" beyond the power of a court to accomplish in equity and, even if that remedy were obtainable in equity, its existence at law would operate to oust equity as a limitation upon the jurisdiction of a court of equity. (Par. 16, *supra.*)

The granting of injunctive relief in this case resulted not only in actually permitting the police power to be flouted and disrupted for more than a year to the detriment of the public generally, but in possibly causing the general public to suffer greater injury than that which would have been suffered by the petitioners had they been arrested,

pleaded the statute's invalidity and awaited final determination thereon at law without in the meantime breaking the law in order to show a business profit.

In answering the jurisdictional question in the negative as this court does, it is fully aware of the great public interest in the question of the validity of Act 147, Session Laws of 1949, and of the rest and quietude that a final disposition of that question would bring to those interested. But the equity court below should not have entertained jurisdiction nor should this court on appeal from that court's decree in order to pass upon the question of validity.

That portion of the decree dissolving the restraining orders and temporary injunctions, denying the prayers for permanent injunction and dismissing the bills for injunction is affirmed, but on the ground that the bills failed to state a case of proper cognizance in equity. To effectively prevent the existing injunctive restraint as continued in force pending appeal by the other portion of the decree from so continuing pending further appeal, however, this court will enter on presentation a new and final decree consistent with this opinion.

*Y. Fukushima* (*Fukushima & Morita* on the briefs) for Walter F. Y. Liu and Genevieve H. Liu, appellants in case No. 2795.

*Fong, Miho & Choy* for Paul B. Low and Sepa Tanoai, appellants in case No. 2796. *W. C. Chuck* was present but did not argue, *Mr. Fukushima* arguing for all appellants in these consolidated cases.

*S. Okumura,* Deputy City and County Attorney (*W. D. Godbold,* City and County Attorney, with him on the briefs), for George M. Farr, appellee in case No. 2795, and for Daniel S. C. Liu and George M. Farr, appellees in case No. 2796.